## TIMMIS *v.* BENNETT.

1. LIBEL AND SLANDER—PRIVILEGED COMMUNICATIONS—ABSOLUTE PRIVILEGE—PUBLIC POLICY.

The great underlying principle upon which the doctrine of privileged communications stands is public policy, especially so in the case of absolute privilege where the defamer is protected from all liability to prosecution for the sake of the public good even though the defamation be both false and malicious.

2. SAME—ABSOLUTE PRIVILEGE—LEGISLATIVE, JUDICIAL AND EXECUTIVE PROCEEDINGS.

Generally, absolute privilege from being called to account for language used is confined to cases in which the public service or the administration of justice is involved, such as language used in legislative, judicial and executive proceedings and is not intended so much for the protection of those engaged in the service as it is for the promotion of the public welfare.

3. SAME—ABSOLUTE PRIVILEGE—GOOD FAITH—MALICE.

Questions of good faith and absence of malice are immaterial in connection with an absolutely privileged communication.

4. SAME—QUALIFIED PRIVILEGE—MALICE—GOOD FAITH.

A qualifiedly privileged communication is actionable if made with actual malice, but not if made in good faith.

REFERENCES FOR POINTS IN HEADNOTES
[1] 33 Am Jur, Libel and Slander § 124.
[2, 5] 33 Am Jur, Libel and Slander § 125.
[3, 4] 33 Am Jur, Libel and Slander § 113.
[6] 33 Am Jur, Libel and Slander § 146 *et seq.*
[7, 15] 33 Am Jur, Libel and Slander § 126.
[9–11] 33 Am Jur, Libel and Slander § 111.
[12, 13] 33 Am Jur, Libel and Slander § 266.
[14, 17] 33 Am Jur, Libel and Slander § 297.
[15] 33 Am Jur, Libel and Slander § 127.
[16] 33 Am Jur, Libel and Slander §§ 137, 167.
[18] 33 Am Jur, Libel and Slander § 187.
[19] 33 Am Jur, Libel and Slander § 293.

5. SAME—ABSOLUTE PRIVILEGE—ACTS OF STATE—JUDICIAL PROCEEDINGS—EXTENT OF PROTECTION.

Absolute privilege from prosecution for a defamatory statement is strictly confined to acts of state and in judicial proceedings the protection extends to judges, counsel and witnesses.

6. SAME—ABSOLUTE PRIVILEGE—ATTORNEY'S STATEMENTS BEFORE COMMENCEMENT OF ACTION.

Claimed libelous statements by an attorney made when he was contemplating the commencement of an action for damages, involving plaintiff and others, on behalf of a client would not be subject to the protection of an absolutely privileged communication, since they were not made during the course of a trial or as a part of a judicial proceeding.

7. SAME—QUALIFIED PRIVILEGE—IMPERFECT OBLIGATION.

A qualified privilege extends to all communications made in good faith upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty, embracing cases where the duty is not a legal one but one where it is of a moral or social character of imperfect obligation.

8. SAME—PRIVILEGED COMMUNICATION—MALICE—QUESTION FOR JURY.

A privileged communication is made on such an occasion as rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff and throws upon the latter the onus of proving malice in fact and not of proving it by extrinsic evidence only as he has a right to require that the alleged libel itself shall be submitted to the jury, that they may judge whether there is any evidence of malice on the face of it.

9. SAME—MALICE—EVIDENCE.

Malice is an essential element in the plaintiff's case in an action for libel and while the circumstances shown need not be such as to necessarily lead to the conclusion that malice existed or are such as to be inconsistent with its nonexistence, they must be such as to raise a probability of malice, and be more consistent with its existence than its nonexistence.

10. SAME—MALICE IN FACT.

Malice in fact means ill will against a person and implies a desire and intention to injure.

11. SAME—MALICE IN LAW.

Malice in law means a wrongful act done intentionally and without just cause or excuse and is not necessarily inconsistent with an honest purpose.

12. SAME—MALICE—IMPLIED FROM STATEMENTS AND FALSITY.

Ordinarily malice may be implied from the defamatory nature of the statements and their falsity.

13. SAME—PRIVILEGED COMMUNICATIONS—MALICE IN FACT—EVIDENCE—QUESTION FOR JURY.

The effect of showing that a communication was made upon a privileged occasion is prima facie to rebut the quality or element of malice, casting upon plaintiff the necessity of showing malice in fact, a matter resting upon the libelous matter itself and the surrounding circumstances tending to prove fact and motive and is for jury consideration.

14. SAME—PRIVILEGE A QUESTION OF LAW—MALICE A QUESTION OF FACT.

The question of whether the occasion for the making of a defamatory statement is such as to rebut the inference of malice if the communication be made in good faith is one of law for the court but whether good faith exists is a question of fact for the jury who may find the existence of actual malice from the language of the communication itself, as well as from extrinsic evidence.

15. SAME—CONDITIONALLY PRIVILEGED COMMUNICATION—ELEMENTS.

A conditionally privileged communication must be made in good faith pursuant to an interest to be upheld and be limited in its scope to this purpose, be made upon a proper occasion, in a proper manner and to proper parties only; the privilege arising from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty and is not restricted within any narrow limits.

16. SAME—QUALIFIED PRIVILEGE—MATTERS OF PUBLIC CONCERN—LAW ENFORCEMENT IN CITY—POLICE OFFICERS.

The doctrine of qualified privilege may properly be regarded as including statements made in good faith by a citizen of a community having, or claiming to have, special knowledge or information bearing on a matter of public concern, such as the matter of law enforcement in the city and the acts of members of the city's police department in connection therewith, and communicated to others concerned or interested.

17. SAME—MALICE—EVIDENCE—QUESTION FOR JURY.

Evidence presented in former police officer's action for libel against an attorney for defamatory statements contained in a letter circulated by him to various persons in the city before he commenced an action against various parties, including plaintiff, on behalf of a client, *held*, sufficient to show malice

on the part of defendant entitling plaintiff to go to the jury, hence directed verdict for defendant was error.

18. SAME—QUALIFIED PRIVILEGE—LOSS OF PRIVILEGE THROUGH EXCESSIVE PUBLICATION.

A qualified privilege exists in cases where some communication is necessary and proper in the protection of a person's interest, but this privilege may be lost if the extent of its publication be excessive.

19. SAME — QUALIFIED PRIVILEGE — EXCESSIVE PUBLICATION — EVIDENCE — QUESTION FOR JURY.

Whether there was excessive publication of defamatory statements concerning plaintiff police officer by defendant attorney so as to lose the qualifiedly privileged character of his communication about law enforcement in the city, a matter of public concern in the community where the statements were made, *held*, for jury under evidence presented, hence directed verdict for defendant was error.

Appeal from Kalamazoo; Mosier (Carl D.), J., presiding. Submitted January 14, 1958. (Docket No. 47, Calendar No. 47,515.) Decided April 15, 1958.

Case by Iva D. Timmis against Milo O. Bennett for libel. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

*Leo W. Hoffman*, for plaintiff.

*Milo O. Bennett, in propria persona.*

CARR, J. This is an action for damages based on the publication of alleged false and malicious statements concerning plaintiff. Defendant is an attorney at law, practicing his profession in the city of Kalamazoo. At the time of the occurrence of the events from which this litigation has resulted plaintiff was employed in the police department of said city. In her official capacity she acted as coordinat-

ing officer between her department and the juvenile court office and other official agencies in the city and county.

On August 17, 1954, plaintiff and 2 policemen of the city served a warrant on Mrs. Clara Roblyer who was charged with violating a city ordinance relating to the maintenance of dwelling houses. To the charge Mrs. Roblyer pleaded guilty before the municipal court of the city of Kalamazoo, and was placed on probation. Thereafter, plaintiff, following consultation with the city attorney, filed a petition in probate court alleging Mrs. Roblyer to be mentally incompetent, and asking for the appointment of a guardian for her. In this proceeding defendant Bennett entered his appearance, and subsequently the petition was withdrawn.

The record before us indicates that defendant herein contemplated starting in Mrs. Roblyer's behalf an action for damages against those responsible for the guardianship proceeding. On December 1, 1954, he sent to a number of individuals, some of whom lived in the city of Kalamazoo and others who resided elsewhere, mimeographed copies of a letter which plaintiff claims contained statements libelous as to her, alleging in her declaration that defendant acted maliciously for the purpose of destroying her good reputation and of causing her to lose her position with the city police department. Defendant by answer, to which were attached certain affirmative defenses, denied that his statements in said letter with reference to plaintiff were false, denied that they were libelous, and, further, claimed that he acted without any malice toward plaintiff, or with any desire to injure her.

The communication in question was sent to several people, at least 8 in number. Some of the recipients thereof were witnesses on the trial in circuit court and denied that they were interested in any way in

Mrs. Roblyer's case. It further appears that in some instances the recipients showed defendant's communication to others, or at least permitted others to read it. Without setting the letter forth in full, it referred to the arrest of Mrs. Roblyer on the charge of violating the building code of the city, charging violence on the part of the officers making the arrest, and specifically pointing out that plaintiff was one of such officers. Emphasis was placed on the effect that the arrest had on Mrs. Roblyer, the imputation being that her treatment by the police was reprehensible, and the court proceedings against her were referred to as a "jest and mockery."

The general tenor of defendant's letter is indicated by the following excerpts therefrom:

"Police motives are never readily discernible. Often, as in this case, there is no rhyme or reason for the official misconduct. It is sometimes thought that an individual's lust for power over his fellows, when particularly gratified by official appointment, may swell to the bursting point as the shackles of conscious inferiority gradually fall away. Whatever, it may have been here, those officers, composing that picayune 'police state' we know in Kalamazoo, might well have escaped the disaster to which they are now foredoomed but for their persistence in persecuting Mrs. Roblyer. * * *

"But, without warning, on Friday, October 29th, Iva Timmis, this same policewoman, personally served on Mrs. Roblyer, from the probate court (where all lunacy cases are heard), an order charging that 'Clara Roblyer is a mentally incompetent person' and commanding her to appear in court November 23d, to defend herself against the charge. The judge of probate had been induced to issue this atrocious order on the verified petition of none other than 'Iva Timmis' who swore, *not on information and belief, but of her positive knowledge that* * * *

" 'Clara Roblyer is of the age of 60 years or there-abouts; that she is mentally incompetent to have the charge, custody and management of her person and estate.'   *   *   *

"Mrs. Timmis had no such proof and she knew it. She knew it when she filed the petition in probate court making this abominable charge against Mrs. Roblyer. She knew she was as wrong then as she had been when she joined in those wicked atrocities last summer. But she relied on the police star she owns and the cute, little gun she carries in her hand-bag! When she found, to her dismay, that Mrs. Roblyer was no longer the poor, helpless little crea-ture she had last seen in police court, like all cowards, she scurried for cover."

Following the introduction of plaintiff's proofs in the trial court, defendant moved for a directed verdict in his favor, claiming that the statements made by him in the communication that he circulated among others in the community were absolutely privileged because of the fact that he was acting as attorney for Mrs. Roblyer. The motion was granted, the trial judge determining the issue of privilege in favor of defendant. The jury was instructed accordingly, and judgment was entered on the directed verdict. Plaintiff has appealed.

The circuit judge, in taking the action indicated, concluded that the statements set forth in the letter which plaintiff in her declaration had claimed to be libelous were made by defendant solely in the interests of his client, and that because of his status as an attorney such statements were absolutely privileged. The further view was indicated, as a basis for the directed verdict, that if the privilege were merely qualified there was no evidence of malice, and that such issue could not, in consequence, be properly submitted to the jury. In the brief filed by him in this Court, appellee argues that the trial court was

correct in his conclusions. On behalf of appellant it is insisted that she was entitled to a determination by the jury of the factual questions in the case, and that the trial judge was in error in holding that defendant's statements were privileged.

It has been generally recognized by Court decisions in this State, as well as in other States, that the doctrine of absolute privilege should not be extended beyond certain recognized fields. The reason therefor was tersely suggested by Justice CHAMPLIN in *Bacon* v. *Michigan Central R. Co.*, 66 Mich 166, 169, 170, as follows:

"The great underlying principle upon which the doctrine of privileged communications stands, is public policy. This is more especially the case with absolute privilege, where the interests and necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights and to suffer loss for the benefit of the common welfare. Happily for the citizen, this class of privilege is restricted to narrow and well-defined limits."

In *Raymond* v. *Croll*, 233 Mich 268, this Court declined to recognize as absolutely privileged statements made by the State budget director to the State administrative board with reference to the financial responsibility of the plaintiff, a highway construction contractor. In reaching such conclusion the Court (p 272) quoted with approval from Newell, Slander and Libel (4th ed), § 351, as follows:

" 'Cases of absolute privilege are not numerous, and the courts refuse to extend their number. They are divided into 3 classes. (1) Proceedings of legislative bodies; (2) Judicial proceedings; and (3) Communications by military and naval officers.' "

The Court further stated that (pp 272, 273):

"It is the policy of the courts to keep the doctrine of absolute privilege within these narrow limits, because, as Mr. Newell says, 'It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare.'

" 'Generally speaking, absolute privilege is confined to cases in which the public service or the administration of justice requires complete immunity from being called to account for language used. It applies more directly to matters of public concern, such as language used in legislative, judicial and executive proceedings; and it is not intended so much for the protection of those engaged in the service, as it is for the promotion of the public welfare.' 36 CJ, pp 1240, 1241.

"Our court recognizes the rule of absolute privilege, but it has repeatedly refused to extend its application beyond the necessities of the judicial, legislative, and military occasions. *Mundy* v. *Hoard*, 216 Mich 478; *Bolton* v. *Walker*, 197 Mich 699 (Ann Cas 1918E, 1007); *Trebilcock* v. *Anderson*, 117 Mich 39; *Wachsmuth* v. *Merchants' National Bank*, 96 Mich 426 (21 LRA 278)."

In 15 MLP, Libel and Slander, § 22, pp 411, 412, a number of prior decisions of this Court dealing with the question of privilege in slander and libel cases are cited, and summarized in the following statement:

"An absolutely privileged communication is generally defined as one for which no remedy is provided for damages in a civil action for slander or libel because of the occasion on which it was made or uttered. A communication absolutely privileged, as, for example, words spoken by a judge in his judicial capacity in a court of justice, or a report or statement rendered privileged by an enactment of the legislature, is not actionable, though made malicious-

ly, and questions of good faith and the absence of malice are immaterial; but a communication qualifiedly privileged is distinguishable because it is actionable, if made with actual malice, but not if made in good faith.

"Absolute privilege applies more directly to matters of public concern, in regard to which it is considered as a matter of public policy for the general welfare that persons should be permitted to express their views more freely and fearlessly than in regard to private matters or persons. Thus, absolute privilege has a comparatively narrow scope, and it is, speaking generally, strictly confined to legislative proceedings, judicial proceedings in the established course of justice, acts of state and acts done in the exercise of military and naval authority; and in judicial proceedings the protection of the rule extends to judges, counsel and witnesses."

Defendant's claim that his statements were absolutely privileged rests on the fact that he was an attorney at law. However, the statements which plaintiff claims to have been false and libelous as to her were not made in the course of any judicial proceeding. The mere fact that defendant contemplated starting an action for damages on behalf of Mrs. Roblyer involving the acts of plaintiff and other police officers of the city of Kalamazoo does not bring the situation within the generally recognized rule. While an attorney may not be held liable for statements, even though false and malicious, made during the course of a trial, or as a part of a judicial proceeding, he may not claim absolute immunity with respect to slanderous and libelous statements otherwise published. The extent and the limitations of the rule with reference to attorneys is indicated in the following statement in 33 Am Jur, Libel and Slander, § 179, pp 172, 173:

"In the United States the rule supported by the weight of authority is that attorneys conducting judicial proceedings are privileged from prosecution for libel or slander in respect of words or writings used in the course of such proceedings reflecting injuriously on others, when such words and writings are material and pertinent to the question involved, regardless of how false, malicious, or injurious they may be. Under the rule adopted by the American Law Institute, the statement is privileged if it has some relation to the proceeding in which it is uttered. An attorney at law has, therefore, a conditional privilege to make, during the progress of a trial, such fair comments on the circumstances of the case and the conduct of the parties in connection therewith as, in his judgment, seem proper, and it is not material, if the words are uttered in the course of a trial, whether in form they are addressed to a witness or to the court or jury, or are stated in the argumentative part of the attorney's brief. But the privilege does not extend to slanderous expressions against counsel, parties, or witnesses, when the expressions have no relation to or bearing upon the issue or subject matter before the court. Nor are statements privileged if they are not uttered in the course of a judicial proceeding. A repetition of privileged words uttered in the course of judicial proceedings, when no public or private duty requires an attorney to repeat them, may place him on the same footing as anyone else who utters defamatory statements concerning another."

In the case at bar the factual situation does not permit immunity from liability for libelous statements published by defendant, if they were in fact untrue and libelous, on the ground of an absolute privilege because of his professional status. The letter on which this action was based was not a part of any case in court, or of any other judicial proceeding. The fact that such a case was in contemplation does not alter the situation in this respect. The

trial court was in error in directing a verdict on that ground.

This brings us to the question as to whether defendant's letter and the statements therein made were qualifiedly privileged. The trial judge concluded that, if the principle of absolute privilege was not applicable, the statements made by defendant were at least qualifiedly privileged, and that in the absence of a showing of malice defendant was not liable. The holding in this respect presents the further issue as to the right of the trial judge to determine that there was no evidence of malice instead of leaving the issue to the jury. In *Bacon* v. *Michigan Central R. Co.,* *supra,* it was said (pp 170, 172, 173):

"Qualified privilege exists in a much larger number of cases. It extends to all communications made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation. * * *

"The meaning in law of a privileged communication is that it is made on such an occasion as rebuts the prima facie inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the onus of proving malice in fact; but not of proving it by extrinsic evidence only; he has still a right to require that the alleged libel itself shall be submitted to the jury, that they may judge whether there is any evidence of malice on the face of it. *Wright* v. *Woodgate,* 2 Cromp, M & R 573 (1 Gale Exch 329, 150 Eng Rep 244). It was held in *Somerville* v. *Hawkins,* 10 CB (70 ECL) 583 (138 Eng Rep 231) that, a communication being shown to be privileged, it lies upon the plaintiff to prove malice in fact; that, in order to entitle him to have the question of malice left to the

jury, he need not show circumstances necessarily leading to the conclusion that malice existed, or such as are inconsistent with its nonexistence, but they must be such as raise a probability of malice, and be more consistent with its existence than its nonexistence; and in *Cooke* v. *Wildes.* 5 El & Bl 328 (119 Eng Rep 504), it was held that if the occasion creates such privilege, but there is evidence of express malice, either from extrinsic circumstances or from the language of the libel itself, the question of express malice should be left to the jury. In actions for defamation, malice is an essential element in the plaintiff's case. But in these cases the word 'malice' is understood as having 2 significations; one, its ordinary meaning of ill will against a person, and the other its legal signification, which is a wrongful act done intentionally, without just cause or excuse. These distinctions have been denominated *malice in fact* and *malice in law.* The first implies a desire and an intention to injure; the latter is not necessarily inconsistent with an honest purpose, but, if false and defamatory statements are made concerning another without sufficient cause or excuse, they are legally malicious, and in all ordinary cases malice is implied from the defamatory nature of the statements and their falsity. The effect, therefore, of showing that the communication was made upon privileged occasion is prima facie to rebut the quality or element of malice, and casts upon the plaintiff the necessity of showing malice in fact,—that is, that the defendant was actuated by ill will in what he did and said, with a design to causelessly or wantonly injure the plaintiff,—and this malice in fact, resting, as it must, upon the libelous matter itself and the surrounding circumstances tending to prove fact and motive, is a question to be determined by the jury. The question whether the occasion is such as to rebut the inference of malice if the communication be bona fide is one of law for the court; but whether *bona fides* exist is one of fact for the jury. 1 Amer Lead Cas (5th ed) 193; *Smith* v. *Youmans,* 3 Hill (SC) 85; *Hart* v. *Reed,* 1

B Mon (40 Ky) 166, 169; *Gray* v. *Pentland,* 4 Serge & R (Pa) 420, 423; *Flitcraft* v. *Jenks,* 3 Whart (Pa) 158. The jury may find the existence of actual malice from the language of the communication itself, as well as from extrinsic evidence. *Hastings* v. *Lusk,* 22 Wend (NY) 410, 421; *Coward* v. *Wellington,* 7 Car & P 531, 536 (173 Eng Rep 234); *Wright* v. *Woodgate,* per Parke, B., 2 Cromp, M & R 573, 578; *Jackson* v. *Hopperton,* 16 CB NS (111 ECL) 829 (143 Eng Rep 1352)."

The rule suggested in the *Bacon Case* was followed in *Bostetter* v. *Kirsch Company,* 319 Mich 547, in which it was recognized that the question of qualified privilege is one of law for the court where the facts are not in dispute, the Court further holding that:

"A qualified privilege extends to all communications made in good faith upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty and embraces a duty not a legal one but of a moral or social character of imperfect obligation." (Syllabus 6.)

In the *Bostetter Case* the question of malice on defendant's part was submitted to the jury, the trial court being of the opinion that a qualified privilege existed, and a verdict in defendant's favor was returned. The judgment entered on such verdict was affirmed by this Court. Prior decisions relating to the matter of privilege and burden of proof were cited in support of the conclusion reached.

The decisions of this Court, including the *Bostetter Case,* are in accord with the statement of judicial holdings generally as set forth in 33 Am Jur, Libel and Slander, § 126, pp 124–126:

"A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such com-

munication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits."

An examination of the alleged libelous statement published by defendant discloses that it referred to the matter of law enforcement in the city of Kalamazoo and the acts of members of the police department of the city in connection therewith. It may be assumed that citizens generally are concerned with matters of such character. Obviously the public welfare is involved therein. We think the doctrine of qualified privilege may properly be regarded as including statements made in good faith by a citizen of a community having, or claiming to have, special knowledge or information bearing on such matter of public concern and communicated to others concerned or interested.

The decision of this Court in *Fortney* v. *Stephan,* 237 Mich 603, is, because of the facts involved, of

special interest. The defendant in the case caused
to be published in a newspaper circulated in Ottawa
county articles charging plaintiff, who was at the
time sheriff of said county, with gross misconduct in
office. It was stated that he had given protection to
violators of the law, that the enforcement of the
liquor law was a farce, and that plaintiff had treated
improperly an individual who had made complaint
of the situation. It was claimed in the declaration
filed that the charges were false and that they were
published with malicious intent to injure plaintiff.
Defendant answered that his statements were true,
that he had acted in the public interest, in good faith
and without malice, and that what he had said was
qualifiedly privileged. The question of malice on the
part of defendant was submitted to the jury, and
judgment was entered on the verdict returned. In
determining the issues raised on appeal, this Court
recognized that defendant's charges were qualifiedly
privileged and that, in consequence, the burden of
proof rested on the plaintiff to establish the falsity
of defendant's statements and that they were made
with malice. The judgment entered in the trial court
was affirmed. The factual situation in the case at
bar is somewhat analogous to that in the *Fortney
Case* in that the basis of plaintiff's action for dam-
ages for libel was a published statement concerning
the acts of members of a law enforcement agency.

Whether the proofs were sufficient to support a
finding of malice presented a question that plaintiff
was entitled to have submitted to the jury. There is
involved not merely the testimony as to the motives
and purposes of defendant but also a consideration
of the language in his letter with reference to the
plaintiff. In other words, the manner or form in
which the communication is made may in a case of
this nature be such as to indicate malice. As a part
of plaintiff's proofs, the deposition of defendant,

apparently taken under the discovery rule,* was introduced in evidence. Among those to whom the letter was sent was a reporter for a local newspaper. In response to an inquiry as to why a copy of the communication was sent to said reporter, defendant indicated that he desired "to get a good press for her." In passing on the entire record a jury might infer that defendant had in mind creating an unfavorable impression on the part of those reading his communication, or learning of the contents thereof, with reference to those, including plaintiff, whom he intended to make parties defendant in the contemplated suit for damages on behalf of Mrs. Roblyer. It may not be said that on the trial in circuit court there was no evidence tending to show malice on the part of the defendant.

On behalf of plaintiff it is claimed, also, that the publication was excessive in character, that is, that the letter was sent to some individuals at least having no interest in the subject matter, and that the question of such publication was an issue for the jury to determine. That a privilege may be lost by an excessive publication was recognized by this Court in *Smith* v. *Smith,* 73 Mich 445, 446 (3 LRA 52, 16 Am St Rep 594). It was there held:

"A qualified privilege exists in cases where some communication is necessary and proper in the protection of a person's interest, but this privilege may be lost if the extent of its publication be excessive."

In 33 Am Jur, Libel and Slander, § 187, p 178, holdings in this and other States are summarized as follows:

"As a general proposition, the publication of a defamatory statement qualifiedly privileged should go no further than is required by the moral or social duty to publish, and if a publication is designedly or

---

* See Court Rule No 41 (1945).—REPORTER.

unnecessarily or negligently excessive, the privilege is thereby lost, or at least, whenever a defendant deliberately adopts a method of communication which gives unnecessary publicity to statements defamatory of the plaintiff, the jury will be apt to infer malice."

Under the proofs in the case at bar whether there was an excessive publication and, likewise, whether there was malice on the part of the defendant were questions for the jury. The judgment entered on the directed verdict is reversed, and the case remanded for a new trial.

DETHMERS, C. J., and KELLY, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.