AMPHION, INC., Plaintiff,

v.

BUCKEYE ELECTRIC CO.
and Terrence M. Veith,
Defendants.

No. CIV.02–40213.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 25, 2003.

Robert W. Roddis, Kantner & Associates, Ann Arbor, MI, for Amphion, Incorporated, plaintiff.

Steven A. Roach, Deborah L. Benedict, Miller, Canfield, Detroit, MI, for Buckeye Electric Company, Terrence M. Veith, defendants.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Defendants' "Motion to Dismiss, or in the Alternative, for Summary Judgment, or in the Alternative, Transfer of Venue." For the reasons stated below, the Court will deny the motion to dismiss for improper venue, deny the motion for transfer of venue, deny the motion to dismiss, and deny without prejudice the motion for summary judgment. The Court also denies Plaintiff's motion for leave to file a reply brief to Defendants' reply brief for the reasons stated below.

## I. BACKGROUND

Plaintiff, Amphion, Incorporated ("Amphion"), brings this diversity action for tortious interference with a business relationship under Michigan law. Amphion is a Michigan corporation with its principal place of business in Ann Arbor, Michigan. Amphion had a business relationship with the United States Postal Service ("USPS") and Key Handling Systems, Incorporated ("Key"), in which Key subcontracted work to Amphion on contracts for the USPS. 1st Am. Compl. ¶¶ 6–7; Defs' Mot. at 2. Amphion, in turn, subcontracted work on the contracts to Defendant Buckeye Electric Company ("Buckeye"), an Ohio corporation with its principal place of business in Cincinnati, Ohio. Defs' Mot. at 2. Amphion alleges that Buckeye and its attorney, Defendant Terrence M. Veith, interfered with its business relationships with Key and

USPS. This alleged interference arose out of the fact that Amphion owed money to Buckeye for its work. Pl's Resp. at 2; Defs' Mot. at 2. Buckeye and its attorney communicated with Key and USPS about Amphion's debt. 1st Am. Compl. ¶ 13; Defs' Mot. at 2–3. Subsequently, Key disqualified Amphion from servicing Key's future contracts with USPS. 1st Am. Compl. ¶ 14; Defs' Mot. at 3. Amphion alleges that Defendants' communications with Key and USPS caused this disqualification, thereby tortiously interfering with its business relationships. 1st Am. Compl. ¶ 14. Defendants claim that the disqualification was based on other reasons and that their communications with Key and USPS did not constitute tortious interference. Defs' Mot. at 2–3.

Buckeye filed a lawsuit against Amphion in the Southern District of Ohio on May 23, 2000 for breach of contract, fraudulent representation, conversion, and unjust enrichment. Defs' Mot. at 4, Defs' Ex. H. Amphion counterclaimed for tortious interference. Defs' Mot. at 4, Ex. A. That case settled and was dismissed without prejudice on October 19, 2000. Defs' Mot. at 4, Ex. H. The Court notes that since the dismissal of the previous case was without prejudice, the claim is not precluded from being brought in this action. *See* 18 *James Wm. Moore et al., Moore's Federal Practice and Procedure: Civil* ¶ 131.30 (3d ed.1997).

## II. DISCUSSION

### A. MOTION TO DISMISS FOR IMPROPER VENUE

■ As a threshold matter, this Court will address the venue issues. In this diversity action, venue must be proper under 28 U.S.C. § 1391(a), which states:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). In the present case, both Defendants reside and have their principal place of business in the Southern District of Ohio. Venue would therefore be proper in the Southern District of Ohio under 28 U.S.C. § 1391(a)(1). Just because venue is proper in that district, however, does not entail that it is not proper in another district; "venue may be proper in more than one judicial district." *Overland, Inc. v. Taylor,* 79 F.Supp.2d 809, 811 (E.D.Mich.2000) (Gadola, J.).

Since more than one venue may be proper, the Court must determine whether this district is also a proper venue. For venue to be proper in the Eastern District of Michigan, the district must satisfy 28 U.S.C. § 1391(a)(2). That is, the district must be the location of a substantial part of the events or omissions giving rise to the claim or the location of a substantial part of the property that is the subject of the action. 28 U.S.C. § 1391(a)(2).

Defendants bear the burden of establishing that venue is improper. 17 *James Wm. Moore et al., Moore's Federal Practice* ¶ 110.01 (3d ed.1997). To show that venue is improper in this case, Defendants must show that (1) no substantial part of the events giving rise to this claim occurred in the Eastern District of Michigan and that (2) no substantial part of the property that is the subject of the action is located in the district. *See* 28 U.S.C.

§ 1391(a)(2). In articulating the meaning of "substantial part," the United States Court of Appeals for the Sixth Circuit has stated that "this includes any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir.1998) (citation omitted). Another court has recently stated that § 1391(a)(2) "does not require venue in the district with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenge venue, even if a greater part of the events occurred elsewhere." *Greenblatt v. Gluck,* 265 F.Supp.2d 346, 352 (S.D.N.Y.2003) (citations omitted). Thus, even if a majority of the events occurred in the Southern District of Ohio, venue can still be proper in the Eastern District of Michigan if there is a substantial connection or contact between this case and the district.

In this case, Defendants state that "a substantial part of the events or omissions giving rise to [Plaintiff's] claim *did not* occur in the Eastern District of Michigan." Defs' Mot. at 12 (emphasis in original). Defendants submit that the events in this case occurred in Ohio and that "each of the acts which [Plaintiff] alleges that Defendants committed, were committed in Ohio." *Id.* Defendants further state that Plaintiff has not alleged "any facts which occurred in Michigan." *Id.* at 12–13. In response, Plaintiff claims that a substantial part of the events did occur in the Eastern District of Michigan. Resp. at 7. Plaintiff submits that its offices have been located in Ann Arbor, Michigan throughout the dispute, that a "substantial portion of the equipment installed by Buckeye on the subject projects was first delivered to Amphion in Ann Arbor, Michigan," and that "[t]he money which Buckeye claims it is owed was paid to Amphion by Key in Ann Arbor, Michigan." *Id.* Defendants did not respond to these statements in their reply brief. Additionally, the Court notes that

Defendant Buckeye chose to file a related suit in the Eastern District of Michigan against Chris Erickson, the President of Amphion. *See Buckeye Elec. Co. v. Erickson,* No. 02–40008 (E.D. Mich. filed Jan. 11, 2002). These facts indicate that there are contacts or connections between the Eastern District of Michigan and the present action. Defendants have not met their burden of demonstrating that there are no connections or contacts with the Eastern District of Michigan. Consequently, venue is proper in this district and the Court will deny Defendants' motion to dismiss the action for improper venue.

## B. MOTION TO TRANSFER VENUE

Even if venue is proper, a district court can transfer venue pursuant to 28 U.S.C. § 1404(a). Defendants move for transfer of venue to the Southern District of Ohio under § 1404(a), which provides that the Court may transfer a civil action to "any other district or division where it might have been brought." *United States v. P.J. Dick Inc.,* 79 F.Supp.2d 803, 805–06 (E.D.Mich.2000) (Gadola, J.) (quoting § 1404(a)). In making this decision, the Court must determine whether the action could have been brought in the proposed transferee district, whether a transfer would promote the interests of justice, and whether a transfer would serve the parties' and witnesses' convenience. *Id.* The moving party bears the burden of demonstrating that, in light of these factors, "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot U.S.A., Inc.,* 131 F.Supp.2d 934, 936 (E.D.Mich.2001) (quoting *Rowe v. Chrysler Corp.,* 520 F.Supp. 15, 16 (E.D.Mich.1981)). The moving party must make this showing by a preponderance of the evidence. *Thomas,* 131 F.Supp.2d at 936; *Int'l Union, U.A.W. v. Aluminum*

*Co. of Am.*, 875 F.Supp. 430, 433 (N.D.Ohio 1995).

 In this case, the action could have been brought in the Southern District of Ohio because, as noted above, both Defendants reside and have their principal place of business there. To transfer the action the Court must determine whether a transfer would promote the interest of justice and whether it would serve the convenience of the parties and the witnesses. Courts have broad discretion to grant or deny a motion for transfer of venue under 1404(a). *Overland*, 79 F.Supp.2d at 811 (Gadola, J.) (quoting *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). The factors that guide a district court's discretion when deciding whether to transfer a case include,

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland*, 79 F.Supp.2d at 811 (Gadola, J.) (quoting *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F.Supp. 175, 183 (S.D.N.Y.1995)). Defendants have not described any particular inconveniences associated with this forum. Although presumably some travel may be required between the districts, the distance between the Southern District of Ohio and the Eastern District of Michigan is not great, particularly in light of modern transportation methods. Additionally, the Court notes that Defendant Buckeye chose to file an action in this district on a related matter, that Plaintiff is a resident of this district and chose to file suit here, and that both parties have obtained local counsel. Given these facts and lacking a statement of inconveniences, the Court determines that Defendants have not met their burden in establishing that there should be a transfer of venue. Consequently, the Court will deny Defendants' motion for transfer of venue.

## C. MOTION TO DISMISS

 Having established that venue is proper, this Court now examines Defendants' motion to dismiss the action for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). At the outset, the Court notes that Plaintiff has filed a motion for leave to file a short reply brief to Defendants' reply brief. As discussed below, the Court does not need to reach the issue of privilege addressed in the proposed reply brief. The Court, therefore, in its discretion will deny the motion for leave to file a short reply brief.

Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir.2001) (citations omitted). In applying the standards under Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993).

The Court will not, however, presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). The Court will not dismiss

a cause of action "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

To determine whether Plaintiff has stated a claim, the Court will examine the complaint and any written instruments that are attached as exhibits to the pleading. Fed.R.Civ.P. 12(b)(6) & 10(c). The Court notes that Plaintiff's motion for leave to file a second amended complaint was denied by Magistrate Judge Scheer on April 23, 2003. Consequently, the complaint relevant to this inquiry is the first amended complaint, which Plaintiff filed on December 20, 2002.

As an initial matter, the Court notes that Michigan law applies in this diversity action. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Michigan law, there are four elements of a claim for tortious interference with a business relationship: (1) the existence of a valid business relationship or expectancy, (2) the defendant has knowledge of the relationship or expectancy, (3) the defendant intentionally interferes by improperly inducing or causing a breach or termination of the relationship or expectancy, and (4) the plaintiff suffers damages because of the interference. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery,* 185 F.3d 606, 624 (6th Cir.1999); *Suminski v. Sick, Inc.,* No. 236643, 2003 WL 21871622, at *3 (Mich.Ct.App. Aug.7, 2003).

The Court must examine Plaintiff's complaint and attached written instruments for each of these four elements. Fed.

R.Civ.P. 12(b)(6) & 10(c). Defendants do not dispute the first element, that Plaintiff had a business relationship with Key and USPS. Defs' Mot. at 2; 1st Am. Compl. at ¶ 6. The second element is Defendants' knowledge of the business relationship that Plaintiff had with Key and USPS. This element can be inferred from the claim that Plaintiff "repeatedly informed" Defendants about the consequences that their alleged conduct could have on Plaintiff's "business relationship with both Key and the USPS." 1st Am. Compl. at ¶ 12. Plaintiff has also stated a claim for the fourth element, damage, by stating that it has been "eliminated from requalification with Key to service future USPS contracts, thus interfering with and destroying [Plaintiff's] ability to acquire further contracts with Key and USPS." 1st Am. Compl. at ¶ 14.

The third element requires a particularized inquiry. Michigan courts have interpreted the third element as requiring either conduct that is wrongful per se or done with malice. *See Suminski,* 2003 WL 21871622, at *3, (where the Michigan Court of Appeals required the "intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." (quoting *Feldman v. Green,* 138 Mich.App. 360, 378, 360 N.W.2d 881, 891 (1984))). A wrongful per se act has been defined by the Michigan courts as "an act that is inherently wrongful or an act that can never be justified under any circumstances." *Suminski,* 2003 WL 21871622, at *3, (quoting *Prysak v. R.L. Polk Co.,* 193 Mich.App. 1, 12–13, 483 N.W.2d 629 (1992)). Michigan courts have also articulated the malice standard as requiring that Plaintiff "demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Suminski,* 2003 WL

21871622, at *3, (quoting *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 217 Mich.App. 687, 699, 552 N.W.2d 919, 925 (1996)). Specifically, the Michigan courts have determined that the third element "requires the plaintiff to demonstrate illegal or unethical conduct on the part of the defendant." *Am. Council*, 185 F.3d at 624 (citations omitted). Furthermore, Michigan courts have stated that if "the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 166 Mich.App. 772, 780, 421 N.W.2d 289, 293 (1988).

Consequently, this Court must determine whether, viewing the facts in the light most favorable to Plaintiff, Plaintiff has stated a claim that Defendants committed acts that were wrongful per se or done with malice. Construing the allegations in the light most favorable to Plaintiff, the Court must assume that all of Defendants statements that are alleged to be false, are false. Plaintiff therefore states a claim of the following acts: Defendants falsely communicated to Key and USPS that they were liable for Plaintiff's debt to Defendants, Defendants sent a copy of a proposed complaint against Plaintiff to Key and USPS which they knew contained false statements about Plaintiff, and Defendants pressured Key and USPS to pressure Plaintiff to pay Defendant Buckeye. 1st Am. Compl. ¶ 13. Plaintiff alleges that these acts were done to "purposefully destroy" its business relationships. 1st Am. Compl. ¶ 9.

 Making false statements about liability for contractual debt can be considered an unethical act. The Michigan Rule of Professional Conduct acknowledge that such conduct is unethical by prohibiting lawyers from "knowingly mak[ing] a false statement of material fact or law to a third party." Mich. R. of Prof'l Conduct 4.1.

Since the Michigan courts have considered "unethical conduct" to be wrongful per se, an allegation of false statements is therefore sufficient to state a claim for tortious interference. *Am. Council*, 185 F.3d at 624 (citations omitted). Similar analysis applies to making false statements in a proposed complaint, which can also be considered unethical conduct and therefore wrongful per se under Michigan law. As the Court must assume that the statements are false in this part of the analysis, the issue of privilege that was raised by the parties does not apply because the privilege requires good faith. *See Timmis v. Bennett*, 352 Mich. 355, 369, 89 N.W.2d 748, 755 (1958). Regarding the alleged pressure that Defendants exerted on Key and USPS, it is unclear that such pressuring to pay Defendant Buckeye is wrongful per se. While this course of conduct is not clearly wrongful per se, Plaintiff has alleged that these actions were done to "purposefully destroy" its business relationships. This suffices to meet the malice standard because Plaintiff alleges specific acts, the communications and threatening pressure, along with the destructive intent. *See Suminski*, 2003 WL 21871622, at *3, (quoting *BPS*, 217 Mich.App. at 699, 552 N.W.2d at 919). Michigan courts have stated that if "the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference," however, the Court must assume Plaintiff's alleged purpose to be true in adjudicating this motion. *Erman*, 166 Mich.App. at 780, 421 N.W.2d at 293.

Assuming, as claimed by Plaintiff, that the statements made by Defendants were false and for the purpose of destroying their business, the first amended complaint does articulate acts that wrongfully or maliciously interfered with Plaintiff's business relationships. The Court is satisfied that Plaintiff has stated a claim for tortious

interference with a business relationship and will therefore deny Defendants' motion for dismissal pursuant to Rule 12(b)(6).

### D. MOTION FOR SUMMARY JUDGMENT

Defendants have moved in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). However, "[t]his Court has a general policy that motions for summary judgment will not be considered until after the close of discovery." *Ramik v. Darling Int'l, Inc.*, 161 F.Supp.2d 772, 777 (E.D.Mich.2001) (Gadola, J.) (citing *McLaren Performance Techs., Inc. v. Dana Corp.*, 126 F.Supp.2d 468, 470 (E.D.Mich.2000) (Gadola, J.); *Helwig v. Kelsey–Hayes Co.*, 907 F.Supp. 253, 255 (E.D.Mich.1995) (Gadola, J.)). In this case, a stipulated order of this Court stayed discovery on February 7, 2003 because of the pending motions for change of venue and for dismissal. As the Supreme Court has noted, summary judgment motions are appropriate "*after* adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (emphasis added). Accordingly, the Court, in its discretion, will deny Defendants' motion for summary judgment without prejudice. Defendants may renew their motion for summary judgment at an appropriate time after the close of discovery.

### III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**, that Plaintiff's motion for leave to file a reply brief to Defendants' reply brief [docket entry 21] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss for improper venue [docket entry 10–3] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for transfer of venue [docket entry 10–3] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss for failure to state a claim [docket entry 10–1] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment [docket entry 10–2] is **DENIED WITHOUT PREJUDICE**. Defendants may renew their motion at the appropriate time after the close of discovery.

**IT IS FURTHER ORDERED** that the stay of discovery that was ordered by this Court "until this Court renders a decision on the pending motions" [docket entry 17] is **VACATED**.

**SO ORDERED.**