*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES CASE, JOE NEWPORT, and
STERLING GYMNASTICS ACADEMY, LLC,

UNPUBLISHED
April 23, 2019

    Plaintiffs-Appellants,

v

No. 341645
Macomb Circuit Court
LC No. 2017-000943-CB

SHANNON HUNT,

    Defendant-Appellee.

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Plaintiffs, Charles Case, Joe Newport, and Sterling Gymnastics Academy, LLC, appeal as of right the order of the trial court granting summary disposition to defendant, Shannon Hunt. We affirm.

## I. FACTS

This case arises from a previous lawsuit between the parties.[1] Defendant owns a gymnastic instruction company, Hunt's Gymnastics Academy, LLC. Newport began working for defendant's company in July 2014, and Case began working for defendant's company in December 2014. Newport and Case each signed non-competition agreements in connection with their employment with Hunt's Gymnastics. On March 4, 2015, Newport formed plaintiff Sterling Gymnastics Academy, LLC (Sterling), and in August 2015, left his employment with defendant's company to teach students gymnastics through Sterling. Case left his employment with Hunt's Gymnastics on September 3, 2015, and began working with Sterling.

---

[1] *Hunt's Gymnastics Academy, LLC v Charles Case*, Macomb Circuit Court No. 2016-000268-CB.

In January 2016, Hunt's Gymnastics filed a lawsuit against Sterling, Newport, and Case, alleging breach of contract, intentional misrepresentation, and fraud. The parties settled that lawsuit with Sterling, Newport, and Case agreeing to pay Hunt's Gymnastics $25,000. The Settlement Agreement states that "The Former Employees [Case, Newport, Sterling] have denied any violations of the Non-Compete Agreements." The Settlement Agreement further provides that the previous non-competition agreements were replaced by the terms of the Settlement Agreement.

Both Sterling and Hunt's Gymnastics are members of the organization USA Gymnastics, the national governing body for the sport of gymnastics in the United States.[2] On February 9, 2017, defendant's attorney sent an e-mail on behalf of defendant to Loree Galimore at USA Gymnastics, stating:

> This email is written on behalf of Ms. Shannon Hunt, the owner of Hunt's Gymnastics Academy in Harrison Township, Michigan to investigate a potential ethics violation committed by Sterling Gymnastics Academy in Sterling Heights, Michigan.
>
> By way of background information, the owners of Sterling Gymnastics Academy are Joseph Newport and Charles Case. Mr. Newport and Mr. Case are former employees of Hunt's Gymnastics Academy. Both employees signed a Non-Competition Agreement as a condition of their employment. When Sterling Gymnastics Academy opened for business, a lawsuit was filed asserting multiple violations of the Employment Agreements. A settlement was reached where the owners of Sterling Gymnastics Academy agreed to pay for violations of their Agreements.
>
> It has been recently discovered that Sterling Gymnastics Academy has been advertising on Facebook that Sterling Gymnastics will give a $50 gift card if a parents [sic] removes their child from a gymnastics facility in a certain geographic area (where Hunt's Gymnastics Academy and a few other local clubs are located) to join their club. Ms. Hunt believes this to be a direct violation of USA Gymnastics ethics and conduct policies.
>
> Please investigate this matter and take the appropriate actions.

Plaintiffs thereafter initiated this lawsuit against defendant, alleging defamation, tortious interference with business expectancies and contractual relations, and false light as a result of the e-mail. Defendant moved for summary disposition of plaintiffs' claims under MCR 2.116(C)(7), (8), and (10). The trial court granted defendant's motion, dismissing the complaint. Plaintiffs now appeal to this Court.

## II. DISCUSSION

---

[2] See https://usagym.org/pages/aboutus/pages/about_usga.html.

Plaintiffs contend that the trial court erred in granting defendant summary disposition of their claims. This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Graham v Foster*, 500 Mich 23, 28; 893 NW2d 319 (2017). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Although not explicitly stated, the trial court in this case appears to have granted summary disposition to defendant under MCR 2.116(C)(8). A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden*, 461 Mich at 119. A motion for summary disposition under this section is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*.

## A. DEFAMATION

Plaintiffs first contend that the trial court erred in granting defendant summary disposition of their claim of defamation. We disagree.

To set forth a claim of defamation, a plaintiff must demonstrate "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). Similarly, MCL 600.2911 provides a cause of action for libel. Libel is "a statement of and concerning the plaintiff which is false in some material respect and is communicated to a third person by written or printed words and has a tendency to harm the plaintiff's reputation." *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 413; 404 NW2d 765 (1987). However, MCL 600.2911 also provides, in relevant part:

> (2)(a) Except as provided in subdivision (b), in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings.
>
> * * *
>
> (7) An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

Further, this Court has stated that:

> Under subsection 7 [MCL 600.2911(7)], if the publication of the defamatory falsehood is negligent, a private plaintiff must prove economic damages but cannot recover for injuries to feelings. Under subsection 2(a), however, if a private plaintiff proves actual malice, the plaintiff is entitled to, among other

things, actual damages to reputation or feelings. [*Glazer v Lamkin*, 201 Mich App 432, 437; 506 NW2d 570 (1993).]

In this case, plaintiffs' complaint alleges that defendant made defamatory statements about plaintiffs in the February 9, 2017 e-mail to USA Gymnastics, specifically identifying two alleged wrongful statements. The first is the statement that "the owners of Sterling Gymnastics Academy agreed to pay for violations of their [employment] Agreements," which plaintiffs assert is a false statement. Plaintiffs contend that by characterizing the settlement agreement as an agreement that plaintiffs would pay for "violations" of the employment agreements, defendant suggested to USA Gymnastics that plaintiffs admitted the allegations of the prior lawsuit, which included misappropriation of defendant's business information. Plaintiffs argue that by doing so, defendant in essence suggested that plaintiffs engaged in potentially criminal activity.

The second statement that plaintiffs contend is defamatory is defendant's statement that plaintiffs' advertising campaign, in which they offered a $50 gift card to parents who removed their children from other gymnastics facilities (such as defendant's), was believed to be "a direct violation of USA Gymnastics ethics and conduct policies." Plaintiffs allege that as a result of the defamatory statements, plaintiffs suffered "substantial economic injury, loss of goodwill, harm to their business reputation, loss of esteem and standing in the business and gymnastics community, and loss of business opportunities, attorney fees and costs."

With regard to the first element of defamation, whether defendant made a false and defamatory statement concerning plaintiffs, a communication is defamatory if, under all the circumstances, it tends to harm the reputation of another to the extent that the person's reputation in the community is lowered and others are deterred from associating with him or her. *Lawrence v Burdi*, 314 Mich App 203, 214; 886 NW2d 748 (2016). The e-mail from defendant's counsel to USA Gymnastics stated "the owners of Sterling Gymnastics Academy agreed to pay for violations of their [employment] Agreements."[3] Plaintiffs allege that this statement was false because although they did pay to settle the prior lawsuit, they did not admit that they violated their employment agreements. The Settlement Agreement in fact states that "The Former Employees have denied any violations of the Non-Compete Agreements." It therefore appears that defendant's statement that plaintiffs "agreed to pay for violations of their [employment] Agreements" is false; plaintiffs paid to settle the prior lawsuit, but did not agree to pay for violations of the employment agreements. Further, it is at least arguable that the statement might tend to harm plaintiffs' reputations.

With regard to the second statement relating to plaintiffs' marketing efforts, the parties do not dispute the truth of defendant's factual assertion that plaintiffs engaged in the marketing activity, but dispute defendant's conclusion that the marketing activities breached any ethics rule

---

[3] During her deposition, defendant admitted that this statement was inaccurate, but testified that at the time the statement was made she believed that it was accurate. Defendant explained that she thought that in signing the Settlement Agreement, plaintiffs had admitted that they had violated the non-compete provisions. She also testified that she had offered to retract the statement, but that plaintiffs refused to agree to a retraction.

of USA Gymnastics. Again, it is at least arguable that suggesting a violation of the organization's ethics rules might tend to harm plaintiffs' reputations.

The second element that plaintiffs were required to demonstrate is that the defendant made an unprivileged communication to a third party. Privilege may be asserted as a defense in a defamation action. *Bedford v Witte*, 318 Mich App 60, 65; 896 NW2d 69 (2016). Absolute privilege, which serves as a defense to defamation even if maliciously published, is narrowly defined. *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006). However, qualified privilege exists in a much larger number of cases, and extends to all bona fide communications concerning "any subject matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty." *Timmis v Bennett*, 352 Mich 355, 366; 89 NW2d 748 (1958) (quotation marks and citation omitted). The privilege for such communications encompasses circumstances in which the underlying duty is of a moral or social character. *Id*. The elements of qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. *Prysak v R L Polk Co*, 193 Mich App 1, 15; 483 NW2d 629 (1992). Whether privilege exists in a defamation context is a question of law for the court. *Northland Wheels Roller Skating Ctr, Inc v Detroit Free Press, Inc*, 213 Mich App 317, 324; 539 NW2d 774 (1995).

In this case, defendant argues that her communication to USA Gymnastics was privileged because she had an obligation as a member of that organization to report wrongdoing or ethical violations by another member. Thus, the interest apparently to be upheld was for USA Gymnastics to be made aware of members who violate the organization's ethical standards. The information reported by defendant, however, did not relate to concerns of the organization, for example, the safety of its athletes or the reputation of the organization; rather, the information reported to USA Gymnastics indicated that plaintiffs had violated their employment contracts with her company, then had set out to compete against her in a manner that she deemed unethical. Because the statement was not limited to upholding any relevant interest, defendant did not rebut plaintiffs' allegation that the communication was not privileged.

The third element of defamation is fault amounting at least to negligence on the part of the publisher. Here, defendant argues that she was not negligent in making the statement because, after calling USA Gymnastics to inquire whether plaintiffs' advertising scheme violated the organization's ethics code, she was directed by USA Gymnastics to convey the information in writing. Defendant argues that because the e-mail was sent in response to a request for information by USA Gymnastics, it was not made negligently on her part. Defendant, however, does not provide authority for the position that a statement is not defamatory if it is made in response to a request for information. Because defendant intentionally made a statement that was not true about plaintiffs to USA Gymnastics, and at least should have known the statement was not true, we conclude that she made the statement at least negligently.

The fourth element relates to damages. Plaintiffs allege that defendant's statement to USA Gymnastics was the equivalent of accusing them of having admitted to engaging in criminal conduct; that is, plaintiffs argue that stating that they paid for violating their employment agreements was tantamount to stating that they admitted that they committed criminal acts. Statements imputing the commission of a crime constitute defamation per se. See

MCL 600.2911(1); *Hope-Jackson v Washington*, 311 Mich App 602, 620-621; 877 NW2d 736 (2015). That is, accusations of criminal activity are considered to be defamation per se not requiring proof of damage to the plaintiff's reputation. *Tomkiewicz v Detroit News, Inc*, 246 Mich App 662, 667 n 2; 635 NW2d 36 (2001). Plaintiffs contend that defendant's statement in this case is defamation per se, and that they therefore have satisfied the damages element without demonstrating special harm.

Contrary to plaintiffs' argument, however, there is nothing in defendant's e-mail suggesting that plaintiffs committed any crime. Defendant's e-mail explains that she sued plaintiffs for violating their non-competition agreements with her, and that she dismissed that lawsuit after plaintiffs paid her for, according to defendant, violating the agreements. Afterwards, they again competed against her in a manner she believed was unethical. There is no explicit statement, nor is there an implication, that plaintiffs committed a crime. Because defendant's statements were not defamatory per se, plaintiffs were obligated to establish the damages element of their defamation claim to avoid summary disposition.

The trial court in this case correctly determined that plaintiffs did not establish that they had suffered any damages, and therefore failed to state a claim of defamation. A review of the record indicates that plaintiffs are still members of USA Gymnastics and that they have lost no clients or employees as a result of defendant's e-mail to USA Gymnastics. Plaintiffs explain that their request for damages is in anticipation of damages that may occur. But a plaintiff may not recover damages that are speculative or based upon conjecture. *Chelsea Inv Group, LLC v Chelsea*, 288 Mich App 239, 255; 792 NW2d 781 (2010). Here, the events that they contend would trigger such damages (USA Gymnastics terminating plaintiffs' membership or clients leaving) have not occurred. In fact, there is no indication that defendant's e-mail to USA Gymnastics was further publicized. Because plaintiffs have no damages to allege, the trial court properly determined that plaintiffs have failed to state a claim for defamation.

## B. TORTIOUS INTERFERENCE

Plaintiffs next contend that the trial court erred in granting defendant summary disposition of their claims of tortious interference with business expectancies and contractual relations. We disagree.

To set forth a claim of tortious interference with a business relationship or expectancy, a plaintiff must demonstrate "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship expectancy was disrupted." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 90; 706 NW2d 843 (2005). The elements of tortious interference with a contract are (1) the existence of a contract, (2) that is breached, (3) as a result of the unjustified instigation by the defendant. *Id*. at 89-90.

In this case, plaintiffs allege that they have contractual relations with USA Gymnastics, and also have business relationships and business expectancies with USA Gymnastics, parents and students, and with their own employees. Plaintiffs further allege that these relationships and

expectancies would be damaged if USA Gymnastics revoked plaintiffs' membership as a result of defendant's e-mail. Plaintiffs agree, however, that this has not occurred.

The record supports the trial court's finding that plaintiffs have not alleged any damages, only the possibility of damages in the future if they lost their affiliation with USA Gymnastics, and that such speculative future damages were not recoverable. Moreover, plaintiffs have not demonstrated the third element of tortious interference with a business expectancy, that defendant induced or caused a breach or termination of a business relationship or expectancy, nor the second element of tortious interference with contractual relations, being breach of a contract. Because plaintiffs failed to set forth a prima facie case of tortious interference with business expectancies or with contractual relations, the trial court properly granted defendant's motion for summary disposition.

## C. FALSE LIGHT

Plaintiffs next contend that the trial court erred in granting defendant summary disposition of their claim of false light invasion of privacy. Again, we disagree.

Invasion of privacy claims fall within four categories, being (1) intrusion upon a plaintiff's seclusion or into the plaintiff's private affairs, (2) public disclosure of embarrassing private information, (3) publicity that places the plaintiff in a false light in public, and (4) appropriation of the plaintiff's likeness or name for the benefit of the defendant. *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 69; 919 NW2d 439 (2018). To maintain an action for false light invasion of privacy, the plaintiff must demonstrate (1) that defendant broadcast to a large number of people or to the public at large (2) information that was unreasonable and highly objectionable by attributing to the plaintiff false characteristics, conduct, or beliefs, (3) thereby placing the plaintiff in a false position. *Duran v Detroit News, Inc*, 200 Mich App 622, 631-632; 504 NW2d 715 (1993). In addition, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Puetz*, 324 Mich App at 69 (quotation marks and citation omitted).

Again, the record supports the trial court's finding that plaintiffs have not alleged any damages, only the possibility of damages in the future, and that such speculative future damages were not recoverable. Moreover, plaintiffs failed to state a claim for false light because they failed to demonstrate that defendant broadcast the information in question to a large number of people. The trial court therefore correctly granted defendant summary disposition of plaintiffs' claim for false light invasion of privacy.

Affirmed.


/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola