OESTERLE v WALLACE

Docket No. 267591. Submitted September 7, 2006, at Lansing. Decided
    September 14, 2006, at 9:00 a.m.

   Michael H. Oesterle brought a defamation action in the Ingham Circuit
   Court against Keith D. Wallace and Andrew J. Broder and their
   respective law firms. The plaintiff and the defendants had been
   opposing counsel in a probate case. The alleged defamatory statement
   had been made in a letter responding to a settlement offer in the
   probate case. In this case, the court, Joyce Draganchuk, J., granted
   the defendants summary disposition, ruling that an absolute privi-
   lege existed with respect to the alleged defamatory statement because
   the letter related to the subject matter of the probate proceeding. The
   plaintiff appealed.

      The Court of Appeals *held*:

      The trial court properly granted summary disposition in the
   defendants' favor. A statement that is absolutely privileged is not
   actionable, even if it was false and maliciously published. Statements
   made by judges, attorneys, and witnesses during the course of judicial
   proceedings are absolutely privileged if they are relevant, material, or
   pertinent to the issue being tried. The absolute privilege applies to
   statements made in the course of settlement negotiations. This result
   furthers the public policy behind the privilege, which, in the case of
   attorneys, is to permit them the utmost freedom as officers of the
   court to secure justice for their clients.

      Affirmed.

LIBEL AND SLANDER — ABSOLUTE PRIVILEGE — ATTORNEYS — DEFAMATORY STATE-
   MENTS MADE IN JUDICIAL PROCEEDINGS — SETTLEMENT NEGOTIATIONS.

   Statements made by judges, attorneys, and witnesses are absolutely
      privileged if they are relevant, material, or pertinent to the issue
      being tried, and such statements are not actionable, even if they are
      false and maliciously published; the absolute privilege applicable to
      defamatory statements made during judicial proceedings applies to
      statements made in the course of settlement negotiations.

*Lipson, Neilson, Cole, Seltzer & Garin, P.C.* (by *Joseph
P. Garin* and *C. Thomas Ludden*), for Keith D. Wallace
and Isackson & Wallace, P.C.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Peter L. Dunlap* and *Ryan K. Kauffman*), for Andrew J. Broder and Payne, Payne, Broder & Fossee, P.C.

Before: FORT HOOD, P.J., and BANDSTRA and DONOFRIO, JJ.

BANDSTRA, J. In this defamation action, plaintiff appeals as of right the trial court's grant of summary disposition in favor of defendants under MCR 2.116(C)(8). We conclude that the absolute privilege applicable to allegedly defamatory statements made during judicial proceedings applies to the statements made in the settlement letter at issue here. We affirm.

I. FACTS AND PROCEDURAL HISTORY

This case arises from litigation in which plaintiff and defendants were opposing counsel. Defendant Andrew Broder and his law firm, defendant Payne, Payne, Broder & Fossee, P.C., represented Patricia Grugen, who was going through a divorce from Ernest Grugen. Plaintiff Michael Oesterle initially represented Debra Grugen, Ernest's daughter, when she was served with a subpoena duces tecum by defendant Broder and his law firm. When Debra allegedly failed to provide oral testimony during the divorce proceedings, defendant Broder moved for contempt sanctions against plaintiff and Debra. Debra then hired the law firm of Honigman, Miller, Schwartz & Cohn, L.L.P. (Honigman), to represent her in connection with the motion, and plaintiff represented himself.

When Ernest died during the pendency of the divorce proceedings, the case was closed and a probate case was opened. Defendant Broder and his law firm and defendant Keith Wallace and his law firm, defendant Isackson &

Wallace, P.C., represent Patricia in the probate matter. Debra and her siblings are represented by Honigman. During the probate proceedings, defendant Wallace, on behalf of Patricia, faxed a letter to Francis O'Donnell, a Honigman attorney, in response to a settlement proposal made by Debra and her siblings. The letter conveyed a counteroffer and listed a number of Ernest's assets and the proposed distribution. The portion of the letter at issue here provides:

> Your paragraph 7 is somewhat ambiguous and needs clarification. From Patricia Grugen's standpoint, all of the other property which is not mentioned earlier in this letter (as being conveyed to your clients), should be deemed to be the property of Patricia Grugen, except for the monies in the Fifth Third Bank account and the social security payments that are on hand, totaling $10,769.00. Those items, presumably, are probate assets and should be used to pay proper claims in the probate proceedings. It may also be the case that Ernest's truck, referenced in paragraph 3 of your letter, ought to be considered a probate asset against which claims are paid. It is unclear to me whether your proposal seeks to include any other property, such as "untitled equipment" of some $40,000 and "untitled personal property" of some $6,000, as being within the probate estate. Frankly, you will find that, as to many of those items, Patricia Grugen has receipts showing that the items were purchased from joint assets during the marriage. *This counter-offer assumes that the children will keep the monies removed by Debra Grugen (and Mike Oesterle) from Ernest's and Patricia's safes, notwithstanding my belief that the removal of those funds was improper.* However, I ask that you disclose to me the amount of monies that were taken (so I may determine if it is consistent with what my client believes is the case). [Emphasis added.]

Plaintiff informed defendant Wallace that he was upset by the allegation of improper conduct, and, in response, Wallace retracted any allegations of wrongdoing. Defendant Broder, however, refused to make such a retraction.

Plaintiff filed a defamation suit against defendant Wallace and his law firm, alleging that the language in the letter contained a false accusation that he committed a crime or otherwise stole or took money. Plaintiff further alleged that defendant Broder and his law firm were liable for the statement under a concert-of-action theory because defendant Broder drafted the letter and instructed defendant Wallace to send it on Isackson & Wallace letterhead.

Defendants Broder and Wallace and their respective law firms moved for summary disposition under MCR 2.116(C)(8), maintaining that, as attorneys, they held an absolute privilege for statements made in connection with judicial proceedings and accordingly could not be held liable for such statements, even if they were defamatory. The trial court held that an absolute privilege existed with respect to the allegedly defamatory statement because defendants' letter related to the subject matter of the judicial proceeding and granted summary disposition in favor of defendants.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(8). *Johnson-McIntosh v Detroit*, 266 Mich App 318, 322; 701 NW2d 179 (2005). MCR 2.116(C)(8) tests the legal sufficiency of the pleadings alone, and the motion must be granted if no factual development could justify the plaintiff's claim for relief. *Id.* We also review de novo as a question of law the applicability of a privilege. *Couch v Schultz*, 193 Mich App 292, 294; 483 NW2d 684 (1992).

## III. ANALYSIS

"The elements of a defamation claim are: (1) a false and defamatory statement concerning the plaintiff, (2) an

unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005). Certain statements are absolutely privileged. *Couch, supra* at 294. "An absolutely privileged communication is one for which no remedy is provided for damages in a defamation action because of the occasion on which the communication is made." *Id.* "A privileged occasion is an occasion where the public good requires that a person be freed from liability for the publication of a statement that would otherwise be defamatory." *Id.* If a statement is absolutely privileged, it is not actionable even if it was false and maliciously published. *Id.*; *Tocco v Piersante*, 69 Mich App 616, 629; 245 NW2d 356 (1976). However, absolute privilege against a defamation action is limited to narrowly defined areas. See *Timmis v Bennett*, 352 Mich 355; 89 NW2d 748 (1958); *Raymond v Croll*, 233 Mich 268; 206 NW 556 (1925); *Froling v Carpenter*, 203 Mich App 368; 512 NW2d 6 (1993).

Statements made by judges, attorneys, and witnesses during the course of judicial proceedings are absolutely privileged if they are relevant, material, or pertinent to the issue being tried. *Mundy v Hoard*, 216 Mich 478, 491; 185 NW 872 (1921); *Couch, supra* at 294-295.

> "An attorney at law has . . . a conditional privilege to make, during the progress of a trial, such fair comments on the circumstances of the case and the conduct of the parties in connection therewith as, in his judgment, seem proper. . . . But the privilege does not extend to slanderous expressions against counsel, parties, or witnesses, when the expressions have no relation to or bearing upon the issue or subject matter before the court." [*Timmis, supra* at 365, quoting 33 Am Jur, Libel and Slander, § 179, pp 172-173.]

" 'Judicial proceedings' may include any hearing before a tribunal or administrative board that performs a judicial function." *Couch, supra* at 294. Further, "immunity extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits." *Id.* at 295. See also *Sanders v Leeson Air Conditioning Corp*, 362 Mich 692, 695-696; 108 NW2d 761 (1961). At issue here is whether settlement negotiations constitute judicial proceedings such that an allegedly defamatory statement made in a letter proposing an offer of settlement is entitled to absolute privilege.[1]

The purpose of absolute immunity under the judicial proceedings privilege, as it applies to attorneys, is to promote the public policy "of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." 3 Restatement Torts, 2d, § 586, comment a, p 247. In *Couch, supra* at 295, this Court stated that "[t]he judicial proceedings privilege should be liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation." This Court demonstrated an expansive view of the scope of the privilege by concluding that it extends to a statement in a prison misconduct report made in connection with a prison disciplinary hearing. *Id.* at 296. In *Timmis, supra* at 359-361, however, the allegedly libelous statements were made in a letter written and distributed by an attorney *before* any complaint was filed on behalf of his client involving the subject matter of the letter. While the letter was arguably in furtherance of the client's interests, our Supreme Court reasoned that the letter was "not a part of

[1] As discussed more fully below, there is no merit to plaintiff's contention that absolute privilege is inapplicable because the allegedly defamatory statement was irrelevant to the judicial proceeding.

any case in court, or of any other judicial proceeding," that "[t]he fact that such a case was in contemplation does not alter the situation in this respect," and that the defendant was thus not afforded absolute immunity under the judicial proceedings privilege. *Id.* at 365.

With the possible exception of Florida,[2] other jurisdictions appear to have uniformly applied the absolute judicial proceedings privilege to statements made by attorneys during settlement negotiations. See, e.g., *Sodergren v Johns Hopkins Univ Applied Physics Laboratory*, 138 Md App 686, 703-705; 773 A2d 592 (2001),[3] *O'Neil v Cunningham*, 118 Cal App 3d 466, 472-477; 173 Cal Rptr 422 (1981),[4] *Pape v Reither*, 918 SW2d 376, 381-382 (Mo App, 1996),[5] *Ruberton v Gabage*, 280 NJ Super 125, 133; 654 A2d 1002 (1995),[6] *Romero v Prince,*

---

[2] In *Silver v Levinson*, 648 So 2d 240, 244 (Fla App, 1994), the Florida District Court of Appeal suggested, but did not specifically decide, that settlement activities would be covered by a qualified privilege rather than an absolute privilege.

[3] The Maryland Court of Special Appeals noted that "all of the state courts that have expressly addressed the issue of the absolute privilege in the settlement context have found that it applies" and held that "there is a sufficient nexus between a judicial proceeding and the settlement of that proceeding, including the negotiations leading to that settlement, the settlement agreement, and the implementation of that settlement agreement, to extend the exclusive privilege to the statements made by [the defendant] regarding [the plaintiff] . . . ."

[4] The California Court of Appeal held that the absolute privilege for publications made in any judicial proceeding was applicable to an attorney's allegedly defamatory statement against his client made in a settlement letter.

[5] The Missouri Court of Appeals held that letters labeled "For Settlement Purposes Only," written in response to the nonperformance of a settlement agreement, were subject to an absolute privilege because they contained an opinion made in connection with a lawsuit, and noted that "the considerations militating in favor of the [judicial] privilege are applicable to the settlement context as well."

[6] The New Jersey Superior Court, Appellate Division, held that threats to file criminal charges made during a settlement conference were

85 NM 474, 477; 513 P2d 717 (NM App, 1973),[7] *Vodopia v Ziff-Davis Publishing Co*, 243 AD2d 368; 663 NYS2d 178 (1997),[8] *Chard v Galton*, 277 Or 109, 113-114; 559 P2d 1280 (1977),[9] *Bennett v Computer Assoc Int'l, Inc*, 932 SW2d 197, 201 (Tex App, 1996),[10] and *Price v Armour*, 949 P2d 1251, 1257-1258 (Utah, 1997).[11]

"As a matter of public policy, the balance is struck heavily in favor of the free disclosure of information during

protected by absolute privilege because they were "unquestionably made during the course of a judicial proceeding."

[7] The New Mexico Court of Appeals held that an absolute privilege applied to allegedly defamatory statements contained in a letter discussing settlement negotiations because the letter was written to achieve the objects of the litigation and, as such, was "written during the course of and as a part of judicial proceedings."

[8] The New York Supreme Court, Appellate Division, held that an absolute privilege applied to allegedly defamatory statements contained in a letter written during the course of settlement negotiations because the letter was written in an attempt to settle a claim and its contents "were relevant and pertinent to that claim."

[9] The Oregon Supreme Court reasoned that

if it is logical to extend the umbrella of absolute privilege to include . . . statements which are made by a lawyer outside of the pleadings and actual trial of the case (and we believe that it is), there seems to be no logical reason why the same liberal criteria for the determination of what constitutes "some relation" should not be applicable. It is equally important that a lawyer enjoy the same degree of freedom in settlement of his client's case as that which he enjoys in its actual pleading or trial.

The Court went on to hold that the absolute privilege applied to an allegedly defamatory statement contained in a letter written in an attempt to settle a case without filing suit because the statement was "sufficiently related to the subject of the litigation . . . ."

[10] The Texas Court of Appeals held that "remarks uttered during settlement negotiations bear enough relationship to a pending or potential suit to fall within the scope of absolute privilege."

[11] The Utah Supreme Court held that an absolute privilege applied to defamatory statements contained in a letter concerning settlement negotiations because settlement is a part of judicial proceedings.

a judicial proceeding. In order to achieve this balance, those who participate in the judicial process must be able to do so without the specter of potential civil liability for defamation hanging over their heads." [*Sodergren, supra* at 695, quoting *Imperial v Drapeau*, 351 Md 38, 45; 716 A2d 244 (1998).]

Here, because the allegedly defamatory statement was made after the commencement, and in the context, of the probate litigation, it is properly characterized under *Timmis* as having been made during judicial proceedings. Further, liberally construing the privilege here, as the Court did in *Couch*, it applies to statements made in a settlement letter just as it does to statements made in a prison misconduct report. This result is consistent with the apparent consensus in all other jurisdictions that have decided the issue.

Additionally, this result furthers the public policy behind the privilege. Defendants' statement that funds had been improperly removed from a safe by Debra and her then-attorney, plaintiff here, was made in the context of an offer that, nonetheless, Debra and her siblings should keep the funds as part of the proposed settlement. The challenged statement thus suggested that the offer was potentially more advantageous than it might otherwise be, inasmuch as it could resolve underlying issues regarding prior wrongful conduct. Defendants made this statement to better advance their client's interest in the settlement negotiations, exactly the purpose behind the absolute privilege that was, accordingly, properly applied here.

The trial court properly granted summary disposition in favor of defendants. The allegedly defamatory statement made in a letter written during the course of settlement negotiations was subject to an absolute privilege. We affirm.