# STATE OF MICHIGAN

# COURT OF APPEALS

SEAN KELLEY,

        Plaintiff-Appellant,

v

ERIC PEET and CONNIE PEET,

        Defendants-Appellees.

UNPUBLISHED
February 25, 2016

No. 326669
Allegan Circuit Court
LC No. 13-052272-CZ

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Sean Kelley, appeals as of right the order granting summary disposition to defendants, Eric Peet and Connie Peet, pursuant to MCR 2.116(C)(8) in this defamation action. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY[1]

Because of the various family members involved in this action, we find it necessary to provide a brief background explaining the familial relationships of the parties in this case. Paul Kelley, now deceased, was an attorney licensed to practice law in Michigan. Eric's mother, Patricia Peet, was formerly married to the late John S. Yerington. In approximately 1984, Yerington retained Paul to perform estate planning and probate work. Yerington died in February 1991. In 1992, Patricia married Paul, and Eric became Paul's stepson. Plaintiff is the son of Paul and stepbrother of Eric. Defendants—Eric and Connie—are a married couple.

This defamation action has its origins in a June 4, 2013 request for investigation defendants[2] filed with the Michigan Attorney Grievance Commission (AGC) against Paul. The

---

[1] The underlying facts of this case are nearly identical to the related suit in *Estate of Paul Kelley v Eric Peet*, wherein plaintiff's late father, Paul Kelley, filed suit in lower court no. 14-053448-CZ. The appeal in that case is pending before us in docket no. 323621.

[2] It is not readily apparent from the request for investigation that Connie made the statements contained therein. However, because defendants' brief on appeal impliedly concedes she made

request raised questions about Paul's handling of Yerington's estate and alleged that he orchestrated a complicated scheme of fraud, embezzlement, and money laundering. According to the request filed with the AGC, Paul engaged in this scheme with the help of plaintiff, a tax consultant who lives in California. The gist of the allegations was that, through a series of fraudulent actions, Paul and plaintiff funneled money from the Yerington estate, making it their "full[-]time occupations to embezzle, launder, and conceal" the assets in the Yerington estate. The request contained an 8-page letter outlining the various alleged transgressions, along with over 300 pages of supporting documents.

The letter attached to the request for investigation stated that, in addition to the materials being sent to the AGC, "[t]hese synopsis, and supporting articles, are being sent to . . . the criminal investigation department for the I.R.S. and . . . to the F.B.I."

On June 21, 2013, the AGC sent defendants a letter indicating that the allegations in the request were "insufficient to warrant review by the Commission" and that the matter was being closed by the AGC Grievance Commissioner. In addition, the AGC sent Paul a copy of the request for investigation.

After receiving a copy of the request for investigation, Paul filed his suit against defendants on May 30, 2014, and plaintiff filed the instant suit on September 12, 2013.[3] On October 3, 2013, defendants moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that statements made to law enforcement[4] were entitled to absolute immunity, and that the disclosure made to the AGC was entitled to immunity under MCR 9.125.

---

the statements by evaluating the issues raised as if Connie made the statements, we decline to look further into this matter.

[3] Plaintiff raised claims that were premised on the defamation claims. Because plaintiff abandons those claims on appeal by failing to raise any issues about them in his statement of questions presented, we could decline to address them. *Ypsilanti Fire Marshall v Kircher (On Reconsideration)*, 273 Mich App 496, 553; 730 NW2d 481 (2007). Moreover, because we find no merit to plaintiff's defamation claims, on which plaintiff impliedly concedes the other claims are premised, we find no merit to these claims and need not address them further.

[4] We note that the request for investigation mentioned that defendants intended to send communications to the criminal investigation division of the IRS, as well as to the FBI. However, the record is unclear as to the precise contents of the communications sent to the IRS and the FBI. Plaintiff's complaint alleged that defendants sent the communications to these other entities, and, for purposes of review under MCR 2.116(C)(8), we accept these well-pleaded allegations as true. See *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). Furthermore, although defendants disputed what exactly was sent to the IRS and the FBI, they never disputed that they sent some form of communication detailing plaintiff's alleged misdeeds to the IRS and FBI. In addition, we note that there has never been any dispute about whether the communication to the criminal division of the IRS was one that was made to law enforcement.

Plaintiff disputed that absolute immunity applied to statements made to law enforcement, contending instead that such statements were only afforded qualified immunity. He argued that caselaw on this point was unclear, and urged the trial court to find that qualified immunity applied. With regard to the communication made to the AGC, plaintiff noted that MCR 9.125 provides absolute immunity, but only "for statements and communications transmitted *solely* to the administrator, the commission, or the commission staff . . . ." (Emphasis added). Plaintiff argued that defendants did not make their statements "solely" to the AGC because they also made them to law enforcement, and thereby lost the absolute immunity provided under MCR 9.125. Further, plaintiff argued that MCR 9.125 did not apply because plaintiff was not an attorney. Accordingly, plaintiff argued that the statements made to the AGC were not immune.

The trial court initially denied defendants' motion for summary disposition on March 21, 2014. However, after it subsequently granted summary disposition to defendants in the related case filed by Paul, the trial court vacated its March 21, 2014 order denying summary disposition, and revisited the matter. The court's written order noted that the instant case contained the same common nucleus of operative facts as did Paul's case (Docket No. 323621), and that its previous ruling in the instant case may be erroneous, given its subsequent conclusion in Paul's case.

On March 10, 2015, after holding a hearing, the trial court granted summary disposition to defendants pursuant to MCR 2.116(C)(8). The court ruled that absolute privilege applied to the statements made to law enforcement, and that MCR 9.125 provided immunity for the statement made to the AGC.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone and the ruling is reviewed de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). Because a (C)(8) motion tests the legal sufficiency of a claim, "the court must accept as true all factual allegations contained in the complaint[,]" and "[t]he motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id.* (quotation marks and citation omitted). Whether privilege applies is a question of law that this Court reviews de novo. *Oesterle v Wallace*, 272 Mich App 260, 263; 725 NW2d 470 (2006).

### B. ABSOLUTE IMMUNITY APPLIES TO DISCLOSURES MADE TO LAW ENFORCEMENT

We first address the claim of defamation alleged against defendants for the statements made to law enforcement officers. This required proof on the following elements:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of

special harm (defamation per se) or the existence of special harm caused by publication. [defamation per quod] [*Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005)[5].]

It is the second element—an unprivileged communication—with which we concern ourselves on appeal. Because the second element requires the communication to be unprivileged, a defamation action fails if the communication was privileged. See *Mitan*, 474 Mich at 24. "A privileged occasion is an occasion where the public good requires that a person be freed from liability for the publication of a statement that would otherwise be defamatory." *Oesterle*, 272 Mich App at 264 (quotation marks and citation omitted). "If a statement is absolutely privileged, it is not actionable even if it was false and maliciously published." *Id*.

The parties' focus before the trial court, as well as their briefs on appeal, concerned whether our Supreme Court's decision in *Shinglemeyer v Wright*, 124 Mich 230; 82 NW 887 (1900), applied an absolute privilege to statements made to law enforcement officials. Plaintiff argues that *Shinglemeyer* did not provide an absolute privilege and that the law in this area lacks clarity. Defendant disagrees and contends that *Shinglemeyer* provides an absolute privilege in this instance, and disagrees about the state of the law in this area post-*Shinglemeyer*.

We agree with defendants that the Court in *Shinglemeyer* announced an absolute privilege for statements made to law enforcement. Furthermore, whatever confusion existed in regard to the type of immunity to be applied to statements made to law enforcement was recently put to rest in *Eddington v Torrez*, __ Mich App __; __ NW2d __ (2015) (Docket No. 320882). In *Eddington*, this Court held that an absolute privilege applies to "any report of criminal activity to law enforcement personnel in the context of a defamation claim[.]" *Id*. at ___; slip op at 3. The *Eddington* Court explained that this absolute privilege dated back to *Shinglemeyer*, which had never been overruled and which remains good law. *Id*. at __; slip op at 2-3. "Consequently, persons who make statements to police in the pursuit of reporting crimes in the context of a defamation claim or assisting the police in investigating crimes enjoy a privilege in those statements against the police divulging them for any purpose other than law enforcement." *Id*. at __; slip op at 2. Our decision in *Eddington* conclusively resolves the issue and rejects any claim by plaintiff that qualified immunity applies in this case. Defendants' statements to law enforcement were absolutely immune.

## C. DEFENDANTS ARE ALSO IMMUNE FOR STATEMENTS MADE TO THE AGC

The next issue concerns whether defendants were entitled to immunity for the statements they made to the AGC. This issue requires us to interpret MCR 9.125. The interpretation of this

---

[5] In his complaint, plaintiff asserted a claim for defamation by implication, which requires a showing that "defamatory implications are materially false," rather than defamatory statements. *Hawkins v Mercy Health Services, Inc*, 230 Mich App 315, 330; 583 NW2d 725 (1998). Plaintiff abandons this claim on appeal by failing to address it in detail. Moreover, because of our conclusion that statements made were absolutely immune, there is no merit to this claim.

court rule is a question of law that we review de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

The principles of statutory interpretation apply to the interpretation of the Michigan Court Rules. *Id*. Thus, the first step is to ascertain the meaning of the text by considering the plain language. *Id*. "The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole." *Id*. (citation and quotation marks omitted). When the language of the court rule "is unambiguous, [this Court] must enforce the meaning expressed, without further judicial construction or interpretation." *Grievance Administrator v Underwood*, 462 Mich 188, 194; 612 NW2d 116 (2000). In doing so, "common words must be understood to have their everyday, plain meaning," *id*., and courts may consult a dictionary to determine a word's common and ordinary meaning, *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). The language of the court rule should be construed reasonably, keeping in mind the purpose of the court rule and to avoid absurd results. See *Rogers v Wcisel*, __ Mich App __, __; __ NW2d __ (2015) (Docket No. 318395), slip op at 4. In addition, when construing MCR 9.125, we are guided by the declaration in MCR 9.102(A) that MCR 9.125, along with the rest of subchapter 9.100 "is to be liberally construed for the protection of the public, the courts, and the legal profession . . . ." See also *Grievance Admin v Deutch*, 455 Mich 149, 165; 565 NW2d 369 (1997).

Defendants' claim of immunity for the communication to the AGC is rooted in MCR 9.125. Pertinent to this case, the rule grants absolute immunity to persons giving statements and communications to the AGC. *Colista v Thomas*, 241 Mich App 529, 535-536; 616 NW2d 249 (2000). MCR 9.125 provides, in pertinent part:

A person is absolutely immune from suit for statements and communications transmitted solely to the administrator,[6] the commission,[7] or the commission staff, or given in an investigation or proceeding on alleged misconduct or reinstatement.

Plaintiff focuses on the word "solely" in MCR 9.125 and contends that defendants' statements to parties other than the AGC—here the FBI and IRS—"rupture" defendants' entitlement to immunity from suit for the statements and communications they made to the AGC. In other words, plaintiff contends that a person can have absolute immunity under MCR 9.125 if he or she only makes a statement to the AGC, but upon making a disclosure to law enforcement—to which absolute immunity would apply—the person loses absolute immunity under MCR 9.125. Even assuming that defendants' AGC submission was published to the FBI and the IRS, as plaintiff alleges in his complaint, it is not clear from plaintiff's pleadings or the record that it was the same transmission, as compared to a subsequent or separate event. Regardless, the specific purpose and intent of MCR 9.125 is to grant people immunity from suit arising out of their statements and communications transmitted to the AGC and to make clear

---

[6] MCR 9.101(3) defines "administrator" as "the grievance administrator."

[7] MCR 9.101(2) defines "commission" as "the Attorney Grievance Commission."

that if a person sends the statements and communications to individuals or entities outside the privileged arena, the immunity is lost.[8] It would be illogical and absurd to conclude, as plaintiff would have us do, that "two rights make a wrong," or in other words, that communicating information to two or more bodies for which the information communicated enjoys absolute immunity somehow breaches or "ruptures" the entitlement to absolute immunity set forth in MCR 9.125. We decline to adopt such a hypertechnical reading of the court rule.

Indeed, adopting plaintiff's proposed interpretation would cause a person to have to make a choice when he or she has knowledge of attorney misconduct that amounts to a crime. If the person wants to disclose the misconduct and take advantage of a grant of absolute immunity for making the disclosure, the person can either, under plaintiff's interpretation: (1) disclose to the AGC; or (2) disclose to law enforcement. The individual in this example would not be immune if he or she made the disclosure to both law enforcement and the AGC, because doing so would run afoul of plaintiff's strained interpretation of the word "solely" in MCR 9.125. Forcing this choice upon a person can hardly be said to comport with MCR 9.102(A)'s goal of protecting the public, courts, and legal profession.

To construe the court rule so as to destroy the grant of immunity in the face of another privileged communication is unreasonable and fails to keep in mind the purpose of the court rule. See *Rogers*, __ Mich App at __, slip op at 4. Chapter 9 pertains to professional disciplinary proceedings wherein, except as provided by the chapter, investigations by the administrator or the staff are privileged from disclosure, confidential, and may not be made public. MCR 9.126(A). The purpose of MCR 9.125 is to provide absolute immunity to people for statements they make to the AGC, with the goal of protecting the public and legal profession, and leaving uncloaked unprivileged communications. The use of the word "solely" is reasonably construed as a limitation to avoid extending the grant of immunity to statements that would otherwise lack immunity. We find that this interpretation not only adheres to the language in the court rule when viewed as a whole, but also comports with the rule's purpose and intent and avoids absurd results. See MCR 9.102(A) ("Subchapter 9.100" which includes MCR 9.125, "is to be liberally construed for the protection of the public, the courts, and the legal profession . . ."); *Rogers*, __ Mich App at __, slip op at 4 (statutes are to be construed so as to avoid absurd results); *In re Consumers Energy*, 310 Mich App 614, 624; __ NW2d __ (2015) ("When construing a statute, a court should not abandon the canons of common sense.") (citation and quotation marks omitted).

In a final effort to avoid the application of absolute immunity under MCR 9.125, plaintiff argues that the rule should not apply with regard to statements made about him because he is not an attorney. Stated differently, plaintiff seeks to restrict the grant of absolute immunity set forth in MCR 9.125 such that it only applies to disclosures made to the AGC, *about attorneys*, and not to statements about non-attorneys who are mentioned in the disclosure. We disagree with plaintiff's interpretation of the court rule. A plain reading of MCR 9.125 reveals no indication that a person's immunity is lost if his or her statements and communications transmitted to the

---

[8] For instance, neither party disputes that if defendants had sent their AGC submission to a media outlet, their entitlement to absolute immunity under MCR 9.125 would be lost.

AGC involve an attorney and a non-attorney. In fact, the first sentence providing immunity under MCR 9.125 is quite broad—nothing in the rule limits the immunity based the contents of the communications made to the AGC. The idea that immunity does not apply when an individual reports potential attorney misconduct which also implicates a non-attorney is simply without support in MCR 9.125. Furthermore, such an idea is in conflict with the very grant of immunity provided under the court rule. If a person is immune for a disclosure to the AGC about an attorney, but not for statements about non-attorneys, the immunity granted under the court rule would effectively be destroyed. This is clearly contrary to the intended purpose of MCR 9.125.

  Affirmed.


        /s/ Jane M. Beckering
        /s/ Elizabeth L. Gleicher
        /s/ Michael J. Kelly