# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF PAUL KELLY, by SEAN C.
KELLEY, Personal Representative,

        Plaintiff-Appellant,

v

ERIC PEET and CONNIE PEET,

        Defendant-Appellees.

UNPUBLISHED
February 25, 2016

No. 323621
Allegan Circuit Court
LC No. 14-053448-CZ

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

In this defamation action, plaintiff, Sean C. Kelley, as personal representative of the estate of his father, Paul Kelley,[1] appeals as of right the order granting summary disposition to defendants, Eric Peet and Connie Peet, pursuant to MCR 2.116(C)(8). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

A brief introduction of the relevant parties is necessary. Eric's mother, Patricia Peet, was formerly married to the late John S. Yerington. In approximately 1984, Yerington retained Paul, an attorney licensed to practice in Michigan, to perform estate planning and probate work. Yerington died in February 1991. In 1992, Patricia married Paul, and Eric became Paul's stepson. Sean is the son of Paul and stepbrother of Eric.[2] Defendants—Eric and Connie—are a married couple.

---

[1] Aside from his role as personal representative, Sean Kelly is involved in this matter as an individual. In lower court no. 13-052272-CZ, Sean filed a lawsuit raising issues that are nearly identical to the issues raised in this case. His appeal in that matter is being heard in Court of Appeals docket No. 326669. For ease of reference in this case, we use the term "plaintiff" to refer to Sean in his representative capacity, and we use "Sean" to refer to him in his individual capacity.

[2] Paul died during the pendency of this appeal and Sean was appointed personal representative of his estate. On October 27, 2015, this Court granted Sean's motion, filed in his capacity as

-1-

This defamation action has its origins in a June 4, 2013 request for investigation defendants[3] filed with the Michigan Attorney Grievance Commission (AGC) against Paul. The request raised questions about Paul's handling of Yerington's estate and alleged that he orchestrated a complicated scheme of fraud, embezzlement, and money laundering. According to the request filed with the AGC, Paul engaged in this scheme with the help of Sean, a tax consultant who lives in California. The gist of the allegations was that, through a series of fraudulent actions, Paul and Sean funneled money from the Yerington estate, making it their "full[-]time occupations to embezzle, launder, and conceal" the assets in the Yerington estate. The request contained an 8-page letter outlining the various alleged transgressions, along with over 300 pages of supporting documents.

The letter attached to the request for investigation stated that, in addition to the materials being sent to the AGC, "[t]hese synopsis, and supporting articles, are being sent to . . . the criminal investigation department for the I.R.S. and . . . to the F.B.I."

On June 21, 2013, the AGC sent defendants a letter indicating that the allegations in the request were "insufficient to warrant review by the Commission" and that the matter was being closed by the AGC Grievance Commissioner. In addition, the AGC sent Paul a copy of the request for investigation.

Paul's receipt of the request for investigation triggered the filing of two lawsuits: one by Sean and one by Paul. On May 30, 2014, Paul sued defendants for, among other matters, defamation[4] based on the allegations raised in the request for investigation. On June 23, 2014, defendants moved the trial court for summary disposition pursuant to MCR 2.116(C)(8), arguing that the statements in the request for investigation and statements made to law enforcement officials[5] were absolutely privileged, and that Paul's claims were barred as a matter of law.

---

personal representative, to be substituted as a party for Paul. *Kelley v Peet*, unpublished order of the Court of Appeals, entered October 27, 2015 (Docket No. 323621).

[3] It is not readily apparent from the request for investigation that Connie made the statements contained therein. However, because defendants' brief on appeal impliedly concedes she made the statements by evaluating the issues raised as if Connie made the statements, we decline to look further into this matter.

[4] Because the only claim Paul mentions on appeal is defamation, the focus of this opinion will be on defamation. Moreover, because the rest of Paul's claims were contingent upon his defamation claims, and because he abandons them on appeal, we decline to find any error requiring reversal in regard to those claims.

[5] We note that the request for investigation mentioned that defendants intended to send communications to the criminal investigation division of the IRS, as well as to the FBI. However, the record is unclear as to the precise contents of the communications sent to the IRS and the FBI. Paul's complaint alleged that defendants sent the communications to these other entities, and, for purposes of review under MCR 2.116(C)(8), we accept these well-pleaded allegations as true. See *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). Furthermore, although defendants disputed what exactly was sent to the IRS

In response, Paul argued that the statements made to law enforcement were afforded only a qualified privilege, rather than an absolute privilege. With regard to the communication made to the AGC, Paul noted that MCR 9.125 provides absolute immunity, but only "for statements and communications transmitted *solely* to the administrator, the commission, or the commission staff . . . ." (Emphasis added). Paul argued that defendants did not make their statements "solely" to the AGC because they also made them to law enforcement, and thereby lost the absolute immunity provided under MCR 9.125.

After a hearing on the motion for summary disposition, the trial court granted summary disposition to defendants pursuant to MCR 2.116(C)(8). The trial court ruled that defendants' statements to law enforcement were entitled to absolute privilege under Michigan law. With respect to MCR 9.125, the court noted that Paul made a compelling argument, but reasoned that his interpretation would destroy immunity when criminal facts are involved in the complaint and law enforcement is contacted. Subsequently, the trial court stated, "[t]hat cannot be what the Supreme Court intended when it passed 9.125. I think what they really intended was to say when you file a complaint with the administrator, the commission or the commission staff you're absolutely immune unless you engage in a publication which is not immune." Accordingly, the trial court interpreted the immunity under MCR 9.125 to apply to situations where the statements are also published to law enforcement officials and granted defendants' motion pursuant to MCR 2.116(C)(8).

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

"A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone and the ruling is reviewed de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). Because a (C)(8) motion tests the legal sufficiency of a claim, "the court must accept as true all factual allegations contained in the complaint[,]" and "[t]he motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id.* (quotation marks and citation omitted). Whether privilege applies is a question of law that this Court reviews de novo. *Oesterle v Wallace*, 272 Mich App 260, 263; 725 NW2d 470 (2006).

### B.  ABSOLUTE IMMUNITY APPLIES TO DISCLOSURES MADE TO LAW ENFORCEMENT

We first address the claim of defamation alleged against defendants for the statements made to law enforcement officers. This required proof on the following elements:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged
> communication to a third party, (3) fault amounting at least to negligence on the

and the FBI, they never disputed that they sent some form of communication detailing Paul's alleged misdeeds to the IRS and FBI. In addition, we note that there has never been any dispute about whether the communication to the criminal division of the IRS was one that was made to law enforcement.

part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication. [defamation per quod] [*Mitan v Campbell*, 474 Mich 21, 24; 706 NW2d 420 (2005)[6].]

It is the second element—an unprivileged communication—with which we concern ourselves on appeal. Because the second element requires the communication to be unprivileged, a defamation action fails if the communication was privileged. See *Mitan*, 474 Mich at 24. "A privileged occasion is an occasion where the public good requires that a person be freed from liability for the publication of a statement that would otherwise be defamatory." *Oesterle*, 272 Mich App at 264 (quotation marks and citation omitted). "If a statement is absolutely privileged, it is not actionable even if it was false and maliciously published." *Id*.

The parties' focus before the trial court, as well as their briefs on appeal, concerned whether our Supreme Court's decision in *Shinglemeyer v Wright*, 124 Mich 230; 82 NW 887 (1900), applied an absolute privilege to statements made to law enforcement officials. Plaintiff argues that *Shinglemeyer* did not provide an absolute privilege and that the law in this area lacks clarity. Defendant disagrees and contends that *Shinglemeyer* provides an absolute privilege in this instance, and disagrees about the state of the law in this area post-*Shinglemeyer*.

We agree with defendants that the Court in *Shinglemeyer* announced an absolute privilege for statements made to law enforcement. Furthermore, whatever confusion existed in regard to the type of immunity to be applied to statements made to law enforcement was recently put to rest in *Eddington v Torrez*, __ Mich App __; __ NW2d __ (2015) (Docket No. 320882). In *Eddington*, this Court held that an absolute privilege applies to "any report of criminal activity to law enforcement personnel in the context of a defamation claim[.]" *Id*. at ___; slip op at 3. The *Eddington* Court explained that this absolute privilege dated back to *Shinglemeyer*, which had never been overruled and which remains good law. *Id*. at __; slip op at 2-3. "Consequently, persons who make statements to police in the pursuit of reporting crimes in the context of a defamation claim or assisting the police in investigating crimes enjoy a privilege in those statements against the police divulging them for any purpose other than law enforcement." *Id*. at __; slip op at 2. Our decision in *Eddington* conclusively resolves the issue and rejects any claim by plaintiff that qualified immunity applies in this case. Defendants' statements to law enforcement were absolutely immune.

## C. DEFENDANTS ARE ALSO IMMUNE FOR STATEMENTS MADE TO THE AGC

The next issue concerns whether defendants were entitled to immunity for the statements they made to the AGC. This issue requires us to interpret MCR 9.125. The interpretation of this

---

[6] In his complaint, Paul asserted a claim for defamation by implication, which requires a showing that "defamatory implications are materially false," rather than defamatory statements. *Hawkins v Mercy Health Services, Inc*, 230 Mich App 315, 330; 583 NW2d 725 (1998). Plaintiff abandons this claim on appeal by failing to address it in detail. Moreover, because of our conclusion that statements made were absolutely immune, there is no merit to this claim.

court rule is a question of law that we review de novo. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

The principles of statutory interpretation apply to the interpretation of the Michigan Court Rules. *Id*. Thus, the first step is to ascertain the meaning of the text by considering the plain language. *Id*. "The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole." *Id*. (citation and quotation marks omitted). When the language of the court rule "is unambiguous, [this Court] must enforce the meaning expressed, without further judicial construction or interpretation." *Grievance Administrator v Underwood*, 462 Mich 188, 194; 612 NW2d 116 (2000). In doing so, "common words must be understood to have their everyday, plain meaning," *id*., and courts may consult a dictionary to determine a word's common and ordinary meaning, *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011). The language of the court rule should be construed reasonably, keeping in mind the purpose of the court rule and to avoid absurd results. See *Rogers v Wcisel*, __ Mich App __, __; __ NW2d __ (2015) (Docket No. 318395), slip op at 4. In addition, when construing MCR 9.125, we are guided by the declaration in MCR 9.102(A) that MCR 9.125, along with the rest of subchapter 9.100 "is to be liberally construed for the protection of the public, the courts, and the legal profession . . . ." See also *Grievance Admin v Deutch*, 455 Mich 149, 165; 565 NW2d 369 (1997).

Defendants' claim of immunity for the communication to the AGC is rooted in MCR 9.125. Pertinent to this case, the rule grants absolute immunity to persons giving statements and communications to the AGC. *Colista v Thomas*, 241 Mich App 529, 535-536; 616 NW2d 249 (2000). MCR 9.125 provides, in pertinent part:

> A person is absolutely immune from suit for statements and communications transmitted solely to the administrator,[7] the commission,[8] or the commission staff, or given in an investigation or proceeding on alleged misconduct or reinstatement.

Plaintiff focuses on the word "solely" in MCR 9.125 and contends that defendants' statements to parties other than the AGC—here the FBI and IRS—"rupture" defendants' entitlement to immunity from suit for the statements and communications they made to the AGC. In other words, plaintiff contends that a person can have absolute immunity under MCR 9.125 if he or she only makes a statement to the AGC, but upon making a disclosure to law enforcement—to which absolute immunity would apply—the person loses absolute immunity under MCR 9.125. Even assuming that defendants' AGC submission was published to the FBI and the IRS, as plaintiff alleges in his complaint, it is not clear from plaintiff's pleadings or the record that it was the same transmission, as compared to a subsequent or separate event. Regardless, the specific purpose and intent of MCR 9.125 is to grant people immunity from suit arising out of their statements and communications transmitted to the AGC and to make clear

---

[7] MCR 9.101(3) defines "administrator" as "the grievance administrator."

[8] MCR 9.101(2) defines "commission" as "the Attorney Grievance Commission."

that if a person sends the statements and communications to individuals or entities outside the privileged arena, the immunity is lost.[9]  It would be illogical and absurd to conclude, as plaintiff would have us do, that "two rights make a wrong," or in other words, that communicating information to two or more bodies for which the information communicated enjoys absolute immunity somehow breaches or "ruptures" the entitlement to absolute immunity set forth in MCR 9.125.  We decline to adopt such a hypertechnical reading of the court rule.

Indeed, adopting plaintiff's proposed interpretation would cause a person to have to make a choice when he or she has knowledge of attorney misconduct that amounts to a crime.  If the person wants to disclose the misconduct and take advantage of a grant of absolute immunity for making the disclosure, the person can either, under plaintiff's interpretation: (1) disclose to the AGC; or (2) disclose to law enforcement.  The individual in this example would not be immune if he or she made the disclosure to both law enforcement and the AGC, because doing so would run afoul of plaintiff's strained interpretation of the word "solely" in MCR 9.125.  Forcing this choice upon a person can hardly be said to comport with MCR 9.102(A)'s goal of protecting the public, courts, and legal profession.

To construe the court rule so as to destroy the grant of immunity in the face of another privileged communication is unreasonable and fails to keep in mind the purpose of the court rule. See *Rogers*, __ Mich App at __, slip op at 4.  Chapter 9 pertains to professional disciplinary proceedings wherein, except as provided by the chapter, investigations by the administrator or the staff are privileged from disclosure, confidential, and may not be made public.  MCR 9.126(A).  The purpose of MCR 9.125 is to provide absolute immunity to people for statements they make to the AGC, with the goal of protecting the public and legal profession, and leaving uncloaked unprivileged communications.  The use of the word "solely" is reasonably construed as a limitation to avoid extending the grant of immunity to statements that would otherwise lack immunity.  We find that this interpretation not only adheres to the language in the court rule when viewed as a whole, but also comports with the rule's purpose and intent and avoids absurd results.  See MCR 9.102(A) ("Subchapter 9.100" which includes MCR 9.125, "is to be liberally construed for the protection of the public, the courts, and the legal profession . . ."); *Rogers*, __ Mich App at __, slip op at 4 (statutes are to be construed so as to avoid absurd results); *In re Consumers Energy*, 310 Mich App 614, 624; __ NW2d __ (2015) ("When construing a statute, a court should not abandon the canons of common sense.") (citation and quotation marks omitted).

Affirmed.


/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

---

[9] For instance, neither party disputes that if defendants had sent their AGC submission to a media outlet, their entitlement to absolute immunity under MCR 9.125 would be lost.