*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ABRAHAM KOLNIERZ,

       Plaintiff-Appellant,

v

NORMAN KOBYLARZ,

       Defendant-Appellee.

UNPUBLISHED
August 15, 2019

No. 342755
Oakland Circuit Court
LC No. 2016-154156-NZ

Before: GADOLA, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant under MCR 2.116(C)(8) and denying plaintiff's motion to amend his complaint. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is defendant's father-in-law by virtue of defendant's marriage to plaintiff's daughter Linda (Linda), now deceased. Plaintiff is in his nineties and is retired from his commercial painting business. Beginning in 2003, plaintiff gave Linda money that she placed in various accounts either in her name or jointly in her and defendant's names. Plaintiff and Linda never had a formal agreement concerning the funds, but plaintiff asserted in his complaint that the money he gave to Linda[1] was to be held for plaintiff's benefit.

Linda died unexpectedly in 2015. Of the various accounts owned by Linda at the time of her death, plaintiff asserted that a brokerage account at Raymond James contained annuities and securities valued at approximately $400,000 purchased with the funds that he had given to Linda

---

[1] The Complaint suggested that the amount totaled approximately $400,000, but the Complaint sought judgment in the principal amount of $181,604.47.

-1-

to hold on his behalf. The brokerage account was a "transfer on death" (TOD) account that, upon Linda's death, transferred to defendant and Linda's sister as joint beneficiaries.

Plaintiff filed suit in July 2016, requesting that the trial court impose a constructive trust on the proceeds of the brokerage account, and issue a money judgment in favor of plaintiff for the $181,604.47 that plaintiff asserted defendant had obtained from the account. Plaintiff's complaint alleged that defendant had failed to respond to requests to voluntarily tender that sum to plaintiff. The trial court issued a scheduling order stating that discovery was to be completed by April 21, 2017. The parties conducted discovery during the intervening time period.

In May 2017, plaintiff moved the trial court for permission to amend his complaint to add a claim against defendant for conversion, asserting that defendant had acknowledged at his deposition that the money in the brokerage account belonged to plaintiff and that he thus was intentionally and wrongfully withholding those funds. After a hearing that was combined with plaintiff's motion to adjourn case evaluation, the trial court issued an order granting an adjournment of the case evaluation, denying without prejudice plaintiff's motion to amend, and directing that the parties proceed with selecting a case facilitator and a location for facilitation. In June 2017, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10); the hearing on this motion was ultimately delayed for several months due to issues regarding facilitation and regarding plaintiff's relationship with his retained counsel. In July 2017, after an unsuccessful facilitation, plaintiff hired new counsel; however, that counsel moved to withdraw as counsel a month later; the trial court granted the motion to withdraw on August 9, 2017, and also stayed the matter for 21 days to allow plaintiff to find new counsel. Plaintiff obtained new counsel in September 2017. Later that same month, the trial court issued a calendar conference order indicating that discovery was to be completed by November 20, 2017. During the additional discovery period, plaintiff's attorney responded to requests for admissions by defendant and responded to defendant's motion to quash document production subpoenas to various financial institutions. The trial court denied defendant's motion in part, permitting plaintiff to subpoena the requested financial records provided that they were kept confidential. The trial court ultimately accepted plaintiff's proposed order regarding these subpoenas, which stated that any documents received as a result of a subpoena would be "for attorney eyes only unless those documents are filed with the court as a relevant exhibit."

In November 2017, plaintiff responded to defendant's motion for summary disposition. In that response, plaintiff requested that the trial court allow plaintiff to amend his complaint to "cure any deficiencies in the complaint" and stated that plaintiff would "submit a proposed amended complaint with a separate motion to amend." Plaintiff subsequently filed a motion for leave to file an amended complaint that proposed to "add new counts for Fraud and Conversion and more precisely describe the allegations of this litigation."

On November 29, 2017, the trial court held a hearing on defendant's motion for summary disposition and plaintiff's motion to amend. Defendant argued that plaintiff's complaint had failed to plead the elements of a constructive trust and had admitted that plaintiff had sought to divest himself of the funds at issue in order to qualify for Medicaid. Defendant also argued that he was not involved in plaintiff's decision to provide funds to Linda. Defendant also argued that, under MCR 2.116(C)(10), plaintiff could not establish that all of the funds in question had in fact originally belonged to plaintiff. Plaintiff argued that amending the complaint would cure any

issues. While the trial court described plaintiff's motion to amend as "really late," plaintiff denied having delayed in moving to amend.

Following the hearing, the trial court issued an opinion and order granting defendant's motion for summary disposition under MCR 2.116(C)(8), stating that plaintiff had "failed to establish the elements necessary to state a viable claim for constructive trust." The trial court also denied plaintiff's motion to file an amended complaint, stating:

> The Court finds that the proposed amended complaint would be futile because Plaintiff cannot show a fiduciary duty owed by Defendant to Plaintiff and there is no evidence that Defendant was involved with the transfer of money or participated in any fraud or conversion. Discovery is closed in this case and the new allegations are inconsistent with the discovery responses. In addition, the Court finds that allowing the amended complaint at this late date would cause actual prejudice to Defendant through undue delay and expense. [Summary disposition opinion and order, 1.]

The trial court denied plaintiff's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(8). *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006). A motion for summary disposition under MCR 2.116(C)(8) "tests the legal sufficiency of the pleadings alone, and the motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id*. All well-pleaded factual allegations in the complaint are accepted as true and construed in a light most favorable to the nonmovant. See *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999).

We review for an abuse of discretion a trial court's decision whether to permit amendment of a pleading. See *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). When granting summary disposition based on MCR 2.116(C)(8), the trial court shall give the parties an opportunity to amend their pleadings, unless the evidence before it shows that the amendment would not be justified. MCR 2.116(I)(5).

## III. SUMMARY DISPOSITION

Plaintiff first argues that the trial court erred by granting summary disposition in favor of defendant under MCR 2.116(C)(8). We disagree. Plaintiff does not argue that the trial court erred by determining that plaintiff's complaint had failed to state a viable claim for a constructive trust; rather, plaintiff argues only that factual issues exist concerning whether defendant converted the funds at issue, breached a fiduciary duty to plaintiff, or committed fraud. However, plaintiff pled none of those causes of action in his complaint. Indeed, the complaint is devoid of any counts, and it makes no effort to plead the elements of those claims; to the

contrary, it consists entirely of 16 numbered paragraphs preceded by an introductory paragraph and followed by a conclusory paragraph, both of which request only that the trial court impose a constructive trust and issue a money judgment.[2]

Moreover, and as plaintiff does not contest, plaintiff failed to validly plead a claim for constructive trust. A constructive trust may be imposed as an equitable remedy when "property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property." *Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993) (quotation marks and citation omitted). In other words, a party seeking a constructive trust must establish that it is necessary to "do equity or prevent unjust enrichment. *Id*. (citation omitted). However, a constructive trust may not be imposed on a party who has "in no way contributed to the reasons for imposing a constructive trust." *Id*.

Here, plaintiff's complaint does not allege that funds belonging to plaintiff had been obtained by defendant through fraud, misrepresentation, undue influence, duress, etc. To the contrary, the complaint states that plaintiff "will testify that he gave his daughter, Linda Kolnierz, the money which is the subject of the dispute herein." It further states that defendant withdrew funds from the annuities in the account after his wife passed away and he became the joint beneficiary of the TOD account. Although the complaint alleges that defendant knew the funds were intended to benefit plaintiff, it does not allege that defendant was in any way involved in the transfer of funds from plaintiff to Linda, or even in having himself named as a joint beneficiary on the brokerage account. The mere acts of withdrawing funds from an account in defendant's name, or refusing to tender those funds voluntarily, cannot support the imposition of a constructive trust; at either of those points in time, any transfer of funds from plaintiff to Linda, and then from Linda to defendant by operation of law, had already occurred.

Further muddying the waters in plaintiff's complaint is the allegation that the funds in the brokerage account were "clearly intended to be part of an irrevocable trust for the benefit of Abraham Kolnierz as part of his Medicaid planning." We find it unnecessary to explore this point at length in light of the other deficiencies in the complaint, but we note that an "irrevocable" trust for the purposes of qualifying for Medicaid is generally one in which the grantor forgoes the right to and availability of the assets used to form the trust in return for

---

[2] At best, plaintiff's complaint contains allegations that defendant requested and obtained funds from the brokerage account while knowing that they belonged to plaintiff, and had "failed, neglected and refused" to tender them to plaintiff. While those allegations might partially support a claim for statutory or common law conversion, see *Aroma Wines & Equip, Inc v Columbian Distrib Services, Inc*, 497 Mich 337, 352-360; 871 NW2d 136 (2015), even the most charitable reading of plaintiff's complaint would not allow us to hold that plaintiff successfully pleaded the elements of conversion. The case for breach of fiduciary duty and fraud is even thinner, especially considering that fraud must be pleaded with specificity. See MCR 2.112(B). Plaintiff did not plead the elements of claims for conversion, breach of fiduciary duty, or fraud.

Medicaid eligibility. *Hegadorn v Dep't of Human Services Director*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket Nos. 156132, 156133, 156134), slip op at 10. While no such trust was ever formed, this allegation in plaintiff's complaint does not support plaintiff's claim to the return of the funds, if indeed they were intended to be removed from plaintiff's estate for the purposes of qualifying for Medicaid in the future.

In sum, the trial court did not err by granting summary disposition in favor of defendant under MCR 2.116(C)(8) with respect to the claims asserted in plaintiff's complaint.

## IV. DENIAL OF AMENDMENT

Plaintiff also argues that, even if the trial court correctly held that summary disposition was warranted on plaintiff's original complaint, it erred by denying plaintiff's motion to file an amended complaint. We disagree.

Again, if a trial court finds that grounds exist for summary disposition under MCR 2.116(C)(8), it should grant the parties leave to amend unless the evidence before it shows that the amendment would not be justified. MCR 2.116(I)(5). MCR 2.118(A)(2) provides that leave to amend "shall be freely given when justice so requires." Motions to amend should ordinarily be granted, unless one or more of the following "particularized reasons" exists:

> [1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility. . . .[*Weymers*, 454 Mich at 658 (citation omitted; alterations in the original).]

Although delay alone is not sufficient to warrant denial of a motion to amend, denial on the basis of delay may be permitted if the opposing party would suffer actual prejudice from permitting the delayed amendment. *Id*. at 659. Actual prejudice may be found, for example, when "the moving party seeks to add a new claim or a new theory of discovery on the basis of the same set of facts, after discovery is closed, just before trial" and the opposing party shows that he did not have reasonable notice that the moving party would rely on the new claim or theory at trial. *Id*.

Here, plaintiff notes that he attempted to amend his complaint once before, after the close of discovery, and that the trial court denied the motion without prejudice. Plaintiff asserts that the motion was denied because "the parties agreed to facilitate the matter." Plaintiff further claims that issues with his legal representation, and the need for additional discovery, prevented any further attempts to amend the complaint until the issue was raised in plaintiff's November 2017 answer to defendant's motion for summary disposition and accompanying motion to amend. Plaintiff argues, therefore, that there was no undue delay. Further, plaintiff argues that defendant had notice of a possible claim for conversion after the May 2017 attempt to amend the complaint. Plaintiff also argues that defendant should have been on notice regarding possible claims for fraud and breach of fiduciary duty because the basis of such claims would be the same intentionally wrongful retention of funds by defendant that were alleged as the basis of the conversion claim. We disagree.

With regard to the claim for breach of fiduciary duty, we note that, prior to his proposed amendment, plaintiff never alleged that defendant had a fiduciary duty to plaintiff, and even the proposed amended complaint only bases the source of a duty on defendant's status as a "joint account owner" with Linda, and, in a circular argument, on plaintiff's claim that defendant was "part of a constructive trust" involving plaintiff's funds. We conclude that the trial court did not err by concluding that defendant would be actually prejudiced by the addition of claims for breach of fiduciary duty, see *Weymers*, 454 Mich at 658, 659; further, we agree with the trial court that such an amendment would be futile. Plaintiff has simply not pleaded any facts, even in the proposed amended complaint, that would support a conclusion that defendant had a "duty to act for the benefit of" plaintiff "on matters within the scope of the relationship," such as the duty that arises when one is a trustee, guardian, agent, or attorney of another. See *In re Karmey Estate*, 468 Mich 68, 74 n 2; 658 NW2d 796 (2003).

With regard to the claim for fraud, plaintiff's proposed amended complaint sought to add the claim premised not only on defendant's failure to tender funds from the brokerage account, but on defendant allegedly having forged checks from plaintiff's accounts or fraudulently altering checks written by plaintiff to Linda. In other words, on the eve of trial, and after more than a year of litigation, plaintiff sought to amend his complaint to add an entirely new claim, based on different factual allegations, against which defendant could not have been expected to be prepared to defend. Although plaintiff argues that the alleged forged checks were only discovered during the extended discovery period, he does not explain why they could not have been discovered during the initial discovery period. Therefore, we are not convinced that plaintiff litigated this matter "as expeditiously as possible." More importantly, we reject plaintiff's argument that the addition of a fraud claim based on allegedly forged checks is "a simple amendment of a recovery theory" that would not prejudice defendant. The fraud claim not only involves a distinct legal theory, but a substantially different factual underpinning— plaintiff argues on appeal that two checks drawn from plaintiff's Chase Bank account (which was not an account at issue previously) were allegedly forged or fraudulent. We conclude under these circumstances that the trial court did not err by finding defendant would be actually prejudiced by allowing amendment of the complaint to add plaintiff's proposed claim for fraud. *Weymers*, 454 Mich at 658, 659.

Regarding the proposed amendment to add a claim for conversion, it is true that defendant should have known in May 2017 that plaintiff was considering adding such a claim. However, for the same reason, it is not clear why plaintiff waited an additional six months, until the eve of trial, after the close of not only the original discovery period but the extended discovery period, to attempt to add such a claim after his first attempt was denied without prejudice. Plaintiff's attempt to resurrect this claim at the eleventh hour smacks of bad faith or dilatory motive. *Weymers*, 454 Mich at 658. Further, as the trial court noted, there was no evidence that defendant was involved in the transfer of money from plaintiff to Linda, other than simply being the beneficiary of the brokerage account. And to the extent plaintiff seeks to base a claim for conversion on allegedly forged checks, defendant would be prejudiced by the addition of this claim at this late hour for the same reason as he is prejudiced by the proposed late

addition of a fraud claim. We conclude that the trial court did not err by declining to allow plaintiff to amend his complaint to add a claim for conversion on the eve of trial, nearly a year and a half after the litigation began.[3]

Affirmed.[4]

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[3] This conclusion is strengthened by the nature of the alterations that plaintiff proposed to make to many of the factual allegations in the complaint—for example, rather than asserting that the funds at issue *were* earmarked for an irrevocable trust as part of plaintiff's Medicaid planning, the proposed amended complaint states—quite to the contrary—that "Plaintiff was not divesting assets to become eligible for social services." And instead of seeking a constructive trust as a form of relief, the proposed amended complaint merely presupposes that such a trust *already existed* and formed the basis for a breach of fiduciary duty claim. Therefore, much of the work performed by defendant to answer plaintiff's original allegations would be absolutely wasted by plaintiff's extreme modification, or some cases reversal, of both his legal theories and factual allegations.

[4] We note that, according to plaintiff, contemporaneously with filing this lawsuit against defendant he also made a "claim in the Probate Court against Linda's estate which resulted in the return of $274,000." It is not clear from the record before us in this case whether there is any "overlap" between the funds returned in that case and the funds plaintiff sought returned here. In any event, plaintiff was apparently able to recover through that process some funds to which he felt he had a legal right.